IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-02293-MSK-MJW

A-W LAND CO., LLC;
VERNON JESSER;
MARY JESSER;
KENT J. McDANIEL;
DEANNA R. McDANIEL;
MARVIN BAY; and
MILDRED BAY, Co-Trustees of the Bay Family Trust, individually and on behalf of all others similarly situated,

       Plaintiffs,

v.

ANADARKO E&P COMPANY LP f/k/a RME PETROLEUM COMPANY; and
ANADARKO LAND CORPORATION f/k/a RME LAND CORP.,

       Defendants.

## OPINION AND ORDER GRANTING MOTION TO DISMISS

**THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss **(#22)**, to which the Plaintiffs responded **(#27)**, and the Defendants replied **(#29)**. Having considered the same, the Court **FINDS** and **CONCLUDES** the following.

### I. Jurisdiction

The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332(a).

### II. Issues Presented

This case concerns a dispute between the Plaintiffs, who are surface owners of certain real property, and the Defendants, who are owners and lessors of the underlying mineral rights. The Plaintiffs allege that the drilling activities of the Defendants, in exploiting the mineral rights,

have unlawfully encroached on their surface rights. Accordingly, they bring three claims for relief: (1) trespass, for failure to minimize the intrusion on the surface rights in accessing the mineral rights; (2) a request for declaratory relief that the drilling is intruding on their rights and a determination of the compensation therefor; and (3) an accounting as to Defendants' royalties for lease of the mineral rights.

The Defendants move to dismiss all of the claims against them for failure to state a claim. They argue that the Complaint does not adequately allege their personal participation in any intrusion on the Plaintiffs' surface rights, because they are merely the lessor of the mineral rights and do not directly engage in any drilling. The Plaintiffs respond that the Defendants can be held liable for the trespasses of their lessees because they have authorized the trespass. The issue, therefore, is whether and in what circumstances Colorado law recognizes a lessor's liability for trespasses by its lessees, and whether the Plaintiffs have alleged sufficient facts to support such a claim.

### III. Material Facts

Construing the Plaintiffs' allegations most favorably to them, the Court finds that the Complaint **(#1)** alleges the following facts.

In the 19th Century, the United States Government granted land to the Union Pacific Railroad (the "Railroad") to support the railroad's expansion. The Railroad sold the surface land to various persons, but retained the mineral rights and a limited easement over the surface land in order to access and remove the minerals underneath (the "Surface Reservation"). The Surface Reservation provided that the mineral owner retained the right to use as much of the surface land as was "convenient and necessary" for the right of way to and from any mines and was

"convenient and proper" for the operation of the mines.

The Railroad leased its mineral rights to various lessees – not parties to this action – in exchange for a percentage of the royalty of the production of the oil and gas. The lessees developed the oil and gas reserves by drilling vertical wells, which used more surface land than would have been used if the wells were drilled directionally.[1] The Railroad, apparently recognizing that the land used by the lessees would exceed the scope of the "convenient and necessary" or "convenient and proper" constraints in the Surface Reservation, entered into Surface Agreements with the surface owners, under which it agreed to pay, from its royalty receipts, 2.5% of the value of the production from the oil and gas wells.[2] The Plaintiffs own the surface rights for land located in the Wattenberg Field in Colorado. The lessees drilled wells on some of the plaintiffs' land.[3] Accordingly, these plaintiffs were parties to the Surface Agreements with the Railroad and received a 2.5% royalty for the production of gas and oil on

---

[1] As explained by this Court in *Greeley-Rothe LLC v. Anadarko E & P Co. LP*, 2010 WL 1380365, at *2 (D. Colo. Mar. 31, 2010), in vertical drilling, the well is drilled straight down from the wellhead on the surface, resulting in wellheads being spaced on the surface according to the spacing of the wells. In contrast, in directional drilling, wells are drilled at angles from the surface wellhead, allowing the wellheads to be clustered together despite varying locations for the underground wells. The clustering of wellheads results in a smaller surface footprint.

[2] For example, if the Railroad received a 15% royalty, it kept 12.5% and passed 2.5% of the royalty along to the surface owner.

[3] These plaintiffs are Ken J. and DeAnna R. McDaniel and Marvin and Mildred Bray (as co-trustees of the Bay Family Trust). The remaining plaintiffs, A-W Land Co., LLC, and Vernon and Mary Jesser, have not had any vertical wells drilled on their property. Although it appears that A-W Land Co. and the Jessers do not have standing in this case, the Court need not address this issue because the McDaniels and Brays have standing and all of the plaintiffs assert the same claims for relief. *See Rumsfeld v. Forum for Academic and Institutional Rights*, 547 U.S. 47, 52 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement."); *Sec'y of Interior v. California*, 464 U.S. 312, 319 n.3 (1984).

their land.

In 2000, the Railroad sold its mineral estates to the Defendants. The Defendants continued to issue leases to others to exploit the minerals on the property, but did not continue the Railroad's practice of paying the 2.5% royalty to the surface owners, instead keeping the entire royalty payment from the lessees for their own benefit.[4] Notwithstanding the Defendants' abandonment of the practice of entering into Surface Agreements, the lessees that drilled new wells under the Defendants' regime did not abandon the practice of drilling vertical wells.[5] As a result, the Plaintiffs contend that the Defendants' lessees are violating the terms of the Surface Reservation, thus engaging in a trespass. The Plaintiffs seek to hold the Defendants liable for that trespass.

## IV. Standard of Review

The Defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. There is a strong presumption against dismissal for failure to state a claim under Rule 12(b)(6). *See Cottrell, Ltd. v. Biotrol Int'l, Inc.,* 191 F.3d 1248, 1251 (10th Cir. 1999). However, a claim must be dismissed if the complaint does not contain enough facts to make the claim "plausible on its face." *Bell Atlantic Corp. v. Twombly*,

---

[4] The Complaint does not specify whether the Defendants took over the existing wells and accompanying Surface Agreements that the Railroad had with the surface owners. Because this case is premised on a trespass theory of liability, not contract, and is in regard to only those wells that were drilled after the year 2000 or are anticipated to be drilled in the future, the question of whether the Defendants are bound by the terms of the Surface Agreements is not before the Court.

[5] The Surface Reservation does not expressly require directional drilling. Rather, the Plaintiffs contend that drilling vertically rather than directionally results in use of the surface land that is greater than the Surface Reservation which reserves only the use of land that is "convenient and necessary" and "convenient and proper."

550 U.S. 544, 570 (2007). A claim is plausible on its face if the complaint contains sufficient facts for a court to draw an inference that the defendant is liable for the alleged misconduct. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *id.* at 556). Although a plaintiff is not required to include detailed factual allegations in a complaint, the complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" and must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In reviewing a complaint under Rule 12(b)(6), a court should accept, as true, all well-pleaded facts and construe all reasonable allegations in the light most favorable to a plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

## V. Analysis

In Colorado, an action for trespass requires a showing of an intentional, physical intrusion upon the property of another without the proper permission from the person in legal possession of the property. *See Pub. Serv. Co. v. Van Wyk*, 27 P.3d 377, 389 (Colo. 2001). A person may be liable for trespass either by intentionally entering onto the land of another, or causing a thing or third party to enter onto the land. *See id.* The intent element is satisfied if the defendant intentionally did the act that constitutes, or inevitably causes, the intrusion; specific intent to violate the property owners' rights is not required. *See Burt v. Beautiful Savior Lutheran Church of Broomfield*, 809 P.2d 1064, 1067 (Colo. Ct. App. 1990). A trespass may be committed by a grantee of an easement if the grantee enters the land outside of the scope of that authorized by the easement. *See Evans v. Colo. Ute Elec. Assoc.*, 653 P.2d 63, 64 (Colo. Ct. App. 1982).

Generally, a lessee is not considered to be the agent of the lessor and, therefore, the lessor

is not ordinarily liable for a trespass committed by his or her lessee. *See Orphan Belle Min. & Mill. Co. v. Pinto Min Co.*, 85 P. 323, 324 (Colo. 1906). However, a lessor may be liable for the trespass of his or her lessees if the lessor aids, abets, encourages, or authorizes the lessee in the commission of the trespass. *See Engler v. Hatch*, 472 P.2d 680 (Colo. Ct. App. 1970). Whether the lessor is liable under such a theory is dependent on the factual circumstances of each case. *See id.*

In this case, the trespass that the Plaintiffs allege arises from the Defendants' lessees use of more surface land than is "convenient and necessary" or "convenient and proper." This contention, in turn, is based upon an assertion that the lessees could have used less surface land by drilling directionally, instead of vertically. This allegation may be sufficient to assert a trespass claim against the lessees, but it is not sufficient to assert a trespass claim against the Defendants. The Plaintiffs do not include any allegation that the Defendants themselves trespassed on the surface land,[6] or that the Defendants expressly directed the lessees to use a particular drilling method or to occupy a certain amount of the surface land. Indeed, the Complaint does not even allege facts that would suggest that the Defendants had any actual knowledge of how and where the lessees were drilling. As a result, the Court finds nothing in the Complaint that alleges facts sufficient to demonstrate that the Defendants aided, abetted, encouraged, or authorized the lessees to engage in a trespass.

Nevertheless, the Plaintiffs argue that the Defendants' status as lessor and abandonment

---

[6] Portions of the Complaint appear to attribute the actual drilling of the wells to the Defendants. In briefing, however, the Plaintiffs admit that the Defendants have not themselves drilled the wells, but are only the lessors of the mineral rights.

of the prior Surface Agreements gives rise to liability, relying primarily on two Colorado cases.[7]

In *Zobel v. Fannie Rawlings Mining Co.*, 111 P. 843, 844–45 (Colo. 1910), Zobel, the owner of a mineral claim leased that claim to an individual named Ostrum to develop. In doing so, Ostrum exceeded the boundaries of Zobel's claim and extracted ore belonging to the defendant, owner of an adjacent parcel. The defendant sued both Ostrum and Zobel in trespass, and a jury awarded damages to the defendant against both Ostrum and Zobel. On appeal, Zobel argued, among other things, that he could not be liable for Ostrum's trespass because "he was not aware, at the time the lessee committed the trespass, that any wrong to plaintiffs was being done." *Id.* at 844. The Colorado Supreme Court disagreed, finding that Zobel could be held liable for "those [trespasses] he did not know of at the time, but of whose perpetration he later had full knowledge [of and which] were ratified by him in knowingly accepting the fruits thereof." *Id.*

On its face, *Zobel* appears to support the Plaintiff's position. However, this Court finds *Zobel* unpersuasive and distinguishable for several reasons. First, and perhaps most notably, the Court in *Zobel* concluded that Zobel had "ratified" Ostrum's trespass by "knowingly accepting the fruits thereof." 111 P. at 844. This statement is subject to at least three possible interpretations, none of which ultimately inure to the Plaintiffs' benefit here. First, the Court peculiarly chose the term "ratified," suggesting that it found evidence in the record to conclude that Zobel somehow gave his purposeful, post-hoc approval to Ostrum's actions, intending to adopt them as Zobel's own. *See* Black's Law Dictionary, 7th Ed. at 1268 (defining "ratification"

---

[7] The other cases cited by the Plaintiffs are inapplicable here. *See Cobai v. Young*, 679 P.2d 121, 123 (Colo. Ct. App. 1984) (addressing whether a landowner could be liable for trespass for snow falling off of his roof onto his neighbors roof); *Miller v. Carnation Co.*, 516 P.2d 661, 664 (Colo. Ct. App. 1973) (addressing whether a landowner who ran a chicken farm could be liable for flies that intruded upon his neighbors land).

as "confirmation and acceptance of a previous act" or "a person's binding adoption of an act already completed . . . by a third party having at the time no authority to act as the person's agent"). Beyond the suggestion that Zobel's mere acceptance of the proceeds of Ostrum's trespass constituted the "ratification," the *Zobel* Court's passing statement on this point does not reveal what other evidence might have led to this conclusion. Here, the Plaintiffs allege no facts, beyond the Defendants' receipt of royalties from its lessees, that could arguably be said to constitute a "ratification" – the Defendants' express adopting of the lessees' actions as being the Defendants' own – that would warrant a similar conclusion.

Second, the statement in *Zobel* can also be interpreted to stand for the proposition that one's mere "knowing[ ] acceptance" of proceeds from another's trespass is itself a "ratification" of that trespass, independent of any other conduct indicating an intent to ratify. (This is perhaps the most reasonable interpretation of the language of *Zobel*.) "Knowing," in this context, necessarily requires the lessor to have actual knowledge of the lessee's trespass. *See Orphan Belle*, 85 P. at 325 ("No officer of the Orphan Belle Company knew that a trespass had been committed until months after the same was committed, and necessarily did not know, at the time it received royalties on the ore extracted from the trespass stope, that it was receiving the fruits of a trespass"); *see also* 58 Corpus Juris Secundum, Mines and Minerals § 277 (reciting general rule that "Ordinarily, the lessor is not liable to others for trespasses or injuries by the lessee," but citing *Zobel* for the proposition that liability may arise where " the lessor has, with knowledge of the facts, ratified the acts"). If this is the rule that *Zobel* establishes, it is nevertheless unhelpful to the Plaintiffs here, who have not alleged that the Defendants had actual knowledge that the

8

lessees were engaging in a trespass[8] or that the proceeds from the leases were obtained by virtue of such a trespass. For example, there is no allegation that the lease specified the manner of drilling that the lessees must engage in, that the Defendants specifically requested vertical drilling, or even that the Defendants knew the type of drilling that the lessees have employed.

Finally, if one gives the "rule" in *Zobel* its broadest possible construction, deeming a lessor's purposeful receipt of property obtained by a lessee through trespass as constituting a "ratification" of that trespass (regardless of whether the lessor knew about the trespass before or after receiving the proceeds), this Court finds that any such rule, although never formally vacated by a subsequent decision of the Colorado Supreme Court, has been eroded into insignificance by a century's development of tort law. *See* 57 CJS Mines § 277, *supra* (acknowledging current general rule that "[t]he mere collection of rents and royalties does not constitute such participation in, or control of, operations as will render the lessor liable" for a lessee's trespass). As a result, the Court finds that *Zobel* does not support a conclusion that the Defendants can be

---

[8] Defining what constitutes the "trespass" in this case is a matter of some challenge. The Plaintiffs appear to believe that the simple fact that lessees drilled wells vertically, rather than directionally, makes such drilling a *per se* trespass. Under these circumstances, an allegation that the Defendants knew the lessees were engaging in vertical drilling might be enough to allege the Defendants' knowledge of the trespass. On the other hand, the scope of the Plaintiffs' property rights is defined by the Surface Reservation, which entitles the lessees to occupy as much land as is "convenient and necessary" or "convenient and proper" to extract the minerals. If there is some basis for concluding that a vertical well can still be considered "convenient and proper," the allegations necessary to demonstrate the Defendants' knowledge of a trespass by a lessee is far more exacting. In such circumstances, the Plaintiffs would have to allege that the Defendants knew how much surface land the lessees were occupying and knew that that amount was more than was "convenient and proper" for such activities, as that term is used in the Surface Reservation.

9

held liable for their lessees' trespasses on the facts alleged herein.[9]

The second case Plaintiffs rely upon is *Engler v. Hatch*, 472 P.2d 680 (Colo. Ct. App. 1970). This case concerned three adjacent parcels of land, which this Court will refer to as "A," "B," and "C." The parcels were situated such that access to Parcel B necessarily crossed Parcel A, and access to Parcel C required crossing Parcels A and B. The original owner of Parcel A granted an easement over the parcel to the owners of Parcels B and C, but when the plaintiff later obtained Parcel A, he denied the validity of the easement. The owner of Parcel B nevertheless advised the owner of Parcel C that he could cross both Parcel A (pursuant to B's owner's disputed claim of an easement over Parcel A) and Parcel B in order to reach his land. The plaintiff, owner of Parcel A, sued the owner of Parcel B in trespass, claiming that he induced the owner of Parcel C to trespass on A's land. The plaintiff prevailed in his trespass action against the defendant for authorizing the owner of Parcel C to cross Parcel A. On appeal, the Colorado Court of Appeals affirmed, noting that the owner of Parcel B "gave [the owner of Parcel C] permission to do so after he had been advised by [the owner of Parcel A's] lawyer that the [owner of Parcel A] did not recognize his easement. He thereafter received payment [from the owner of Parcel C] for the use of the roads which [the owner of Parcel A] constructed . . . ." 472 P.2d at 682. Without significant additional discussion, the Court of Appeals concluded that

---

[9] *Zobel* is also distinguishable in another way. Although the lessor in *Zobel* was held liable under a trespass theory of liability, the actions in extracting minerals from the adjacent owner's land exceeds the tort of mere trespass – which simply requires entry onto another's land and does not require proof of any actual injury, *Antolovich v. Brown Group Retail, Inc.*, 183 P.3d 582, 602 (Colo. Ct. App. 2007) – and begins to approach the tort of conversion. In this regard, Zobel's receipt of converted property could give rise to an obligation of Zobel to return that property (or the proceeds thereof). Here, there can be no contention that the lessee's trespasses on the surface estate amounted to a conversion-like tort implicating the proceeds in the Defendants' hands.

10

"these facts are sufficient to support the court's finding that [the owner of Parcel B] was a trespasser" under an "encouraging or authorizing" theory.

*Engler* is distinguishable on its face. There, it was undisputed that the owner of Parcel B authorized and encouraged the owner of Parcel C to cross Parcel A, whereas here, there is no allegation in the Complaint that the Defendants instructed the lessees to take the particular action – either vertical drilling or using more surface land than was "convenient and proper" – that constitutes the trespass. Accordingly, the conclusion in *Engler* is of no assistance to the Plaintiffs here.

For these reasons, the Court concludes that the Complaint does not allege any fact demonstrating that the Defendants caused, aided, abetted, encouraged, or authorized the lessees' alleged trespass. As a result, the Plaintiffs have failed to state a cognizable claim for trespass against the Defendants and the Defendants' Motion to Dismiss must be granted.[10]

---

[10]Arguably, the Plaintiffs may be able to plead additional facts sufficient to cure the defects discussed herein. However, the Court will not *sua sponte* grant leave for repleading under Fed. R. Civ. P. 15. The deadline for amendment of pleadings in the parties' Scheduling Order **(# 21)** has passed, and it may be that, given the advanced age of this case, allowing repleading at this late stage might be unduly prejudicial to the Defendants. *Beerheide v. Zavaras*, 997 F.Supp. 1405, 1409 (D. Colo. 1998), *citing Foman v. Davis*, 371 U.S. 178, 182 (1962). Should the Plaintiffs believe they can, within the strictures of Fed. R. Civ. P. 11(b)(3), amend the Complaint to state a cognizable claim for trespass, they may move for leave to do so under Rule 15(a), and the Court will evaluate that motion on its merits.

**IT IS THEREFORE ORDERED** that

(1)   Defendants' Motion to Dismiss **(#22)** is **GRANTED**.

(2)   The Clerk of Court is directed to close the case.

Dated this 29th day of September, 2010

                                **BY THE COURT:**

                                */s/ Marcia S. Krieger*

                                Marcia S. Krieger
                                United States District Judge