IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-02293-MSK-MJW

A-W LAND CO., LLC;
VERNON JESSER;
MARY JESSER;
KENT J. McDANIEL;
DEANNA R. McDANIEL;
MARVIN BAY; and
MILDRED BAY, Co-Trustees of the Bay Family Trust, individually and on behalf of all others similarly situated,

       Plaintiffs,

v.

ANADARKO E&P COMPANY LP f/k/a RME PETROLEUM COMPANY; and
ANADARKO LAND CORPORATION f/k/a RME LAND CORP.,

       Defendants.

## OPINION AND ORDER GRANTING MOTION TO AMEND

**THIS MATTER** comes before the Court on the Plaintiffs' Motion to Amend **(#93)** and brief in support **(#94)**, to which the Defendants responded **(#95)**, and the Plaintiffs replied **(#98)**. Having considered the same, the Court **FINDS** and **CONCLUDES** the following.

### I. Jurisdiction

The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332(a).

### II. Issues Presented

This action was brought by a group of individuals and entities that own the surface rights to certain real property in Colorado against the owners of the mineral rights of such property. The Plaintiffs allege that the Defendants are liable for the allegedly unlawful encroachment of

the surface by the lessees of the mineral rights in their drilling activities to access the mineral rights.  In September 2010, this Court dismissed the Plaintiffs three claims for (i) trespass; (ii) declaratory judgment of trespass; and (iii) an accounting for failure to state a claim.  *See* Opinion and Order Granting Motion to Dismiss **(#92)**.  The Plaintiffs now move to amend their complaint to cure the deficiencies identified by the Court.  The Defendants argue that the proposed amendments are futile as the Amended Complaint also fails to state a claim for which relief can be granted.  Accordingly, the issue before the Court is whether the proposed amendments are sufficient to state a claim for trespass in Colorado.[1]

### III.  Material Facts

Construing the Plaintiffs' allegations most favorably to them, the Court finds that the Proposed Amended Complaint **(#93-1)** alleges the following facts.[2]

In the 19th Century, the United States Government granted land to the Union Pacific Railroad (the "Railroad") to support the railroad's expansion.  The Railroad sold the surface land to various persons and/or entities, but retained the mineral rights and a limited easement over the surface land in order to access and remove the minerals underneath (the "Surface Reservation").

---

[1] Although the Complaint and Amended Complaint assert three claims, the only substantive claim for liability is for trespass.  The other two are essentially remedies for such liability.  Accordingly, the Court focuses on the trespass claim to determine whether the proposed amendments are futile.

[2] In considering the Motion to Amend **(#93)** and Anadarko's objection thereto **(#95)**, the Court looks only the Proposed Amended Complaint **(#93-1)**, any exhibits attached thereto (in this case only one, Exhibit A), and any other outside documents that are both (i) incorporated therein by reference and (ii) integral to the claims.  *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997).  In this case, of the numerous documents attached to the Motion to Amend **(#93)**, the only ones appropriate for consideration are the oil and gas leases **(#94-8, 94-9, 94-10, 94-11)** and the one waiver letter **(#94-14)**.

The Surface Reservation provided that the mineral owner retained the right to use as much of the surface land as was "convenient and necessary" for the right of way to and from any mines and was "convenient and proper" for the operation of the mines and/or drilling wells.

The Railroad leased its mineral rights to various lessees (not parties to this action) in exchange for a percentage of the royalty of the production of the oil and gas. These leases included a provision requiring the lessee to obtain the consent and permission of the surface owner prior to entering the land of the surface owner and/or engaging in any drilling activity. The lessees generally developed the oil and gas reserves by drilling vertical wells, which used more surface land than would have been used if the wells were drilled directionally.[3] To accommodate this choice by the lessees, which apparently may result in drilling in excess of the limitations contained in the Surface Reservations, and seemingly in connection with the consent provision of the leases, the Railroad entered into Surface Agreements with the surface owners prior to any drilling on the land. Under these agreements, the Railroad agreed to pay, from its royalty receipts, 2.5% of the value of the production from the oil and gas wells to the Surface Owners.[4]

The Plaintiffs own the surface rights for land located in the Wattenberg Field in Colorado; Anadarko, a company experienced in oil and gas operations and procedures, currently

---

[3] As explained by this Court in *Greeley-Rothe LLC v. Anadarko E & P Co. LP*, 2010 WL 1380365, at *2 (D. Colo. Mar. 31, 2010), in vertical drilling, the well is drilled straight down from the wellhead on the surface, resulting in wellheads being spaced on the surface according to the spacing of the wells. In contrast, in directional drilling, wells are drilled at angles from the surface wellhead, allowing the clustering of wellheads on the surface and, therefore, a smaller surface footprint.

[4] For example, if the Railroad received a 15% royalty, it kept 12.5% and passed 2.5% of the royalty along to the surface owner.

owns the mineral rights, having purchased the rights from the Railroad in 2000.  At the time of the transfer of the mineral rights, there were existing wells on the land.[5]  Accordingly, the plaintiffs owning this land were parties to the Surface Agreements with the Railroad and received a 2.5% royalty for the production of gas and oil on their land.

As to the land that had not already been drilled upon, however, Anadarko continued to issue leases to others to exploit the minerals on the property, but did not continue the Railroad's practice of paying the 2.5% royalty to the surface owners, instead keeping the entire royalty payment from the lessees for their own benefit.  With respect to the consent provision in the leases, Anadarko had consistently waived the consent requirement upon a request by the lessee that specifies the drilling window to which a proposed well will be drilled and the well name.  Upon obtaining the waiver of the consent requirement, the lessees have entered the land of the Plaintiffs and drilled vertical wells.  After the wells are drilled but before royalty payments are made to Anadarko, "division orders" specifying the well name, bottom hole location and percentage revenue due are issued to royalty recipients.  At some point thereafter, the actual royalty payments are disbursed.  Additionally, after the wells are drilled, the location of the wells, including both the surface and bottom locations of the well, are publicly available through the  Colorado Oil and Gas Conversation Commission and on its website.

---

[5] The plaintiffs that own the surface rights for this land are Ken J. and DeAnna R. McDaniel and Marvin and Mildred Bray (as co-trustees of the Bay Family Trust).  The remaining plaintiffs, A-W Land Co., LLC, and Vernon and Mary Jesser, have not had any vertical wells drilled on their property at any time.  Although it appears that A-W Land Co. and the Jessers do not have standing in this case, the Court need not address this issue because the McDaniels and Brays have standing and all of the plaintiffs assert the same claims for relief.  *See Rumsfeld v. Forum for Academic and Institutional Rights*, 547 U.S. 47, 52 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement."); *Sec'y of Interior v. California*, 464 U.S. 312, 319 n.3 (1984).

The Plaintiffs contend that the use of vertical wells instead of directional wells exceeds the scope of the Surface Reservation because the land used in vertical wells is more than what is "convenient and necessary" and "convenient and proper" to drill for oil and gas, *i.e.*, the lessees could use the directional drilling method thereby occupying less of the surface land. As no surface agreements were entered into with Anadarko for these wells, the Plaintiffs are not compensated in the form of royalty payments for the excessive use of the surface land. Accordingly, the Plaintiffs contend that the lessees are violating the terms of the Surface Reservation, thus engaging in a trespass, and seek hold Anadarko liable for that trespass.

### IV.  Standard of Review

Under Fed. R. Civ. P. 15(a), leave to amend a pleading shall be "freely granted" absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Beerheide v. Zavaras*, 997 F.Supp. 1405, 1409 (D.Colo.1998) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)). An amendment can be denied on the grounds of futility if the amended pleading itself would be subject to dismissal. *See Jefferson County Sch. Dist. v. Moody's Investor Servs., Inc.*, 175 F.3d 848, 859 (10th Cir.1999); *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir.1999).

Although there is a strong presumption against dismissal for failure to state a claim under Rule 12(b)(6), *see Cottrell, Ltd. v. Biotrol Int'l, Inc.,* 191 F.3d 1248, 1251 (10th Cir. 1999), a claim must be dismissed if the complaint does not contain enough facts to make the claim "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if the complaint contains sufficient facts for a court to draw an inference that

the defendant is liable for the alleged misconduct. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *id.* at 556). Although a plaintiff is not required to include detailed factual allegations in a complaint, the complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" and must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In reviewing a complaint under Rule 12(b)(6), a court should accept, as true, all well-pleaded facts and construe all reasonable allegations in the light most favorable to a plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

### V.  Analysis

As this Court explained in its Opinion and Order Granting Motion to Dismiss **(#93)**, under Colorado law, an action for trespass requires a showing of an intentional, physical intrusion upon the property of another without the proper permission from the person in legal possession of the property. *See Pub. Serv. Co. v. Van Wyk*, 27 P.3d 377, 389 (Colo. 2001). A defendant may be liable for trespass either by intentionally entering onto the land of another, or by causing a thing or third party to enter onto the land. *See id.* The intent element is in regard to the intent to engage in the act that constitutes, or inevitably causes, the intrusion; specific intent to violate the property owners' rights is not required. *See Burt v. Beautiful Savior Lutheran Church of Broomfield*, 809 P.2d 1064, 1067 (Colo. Ct. App. 1990).

Generally, a lessor is not liable for a trespass committed by his or her lessee because the lessee is not considered an agent of the lessor. *See Orphan Belle Min. & Mill. Co. v. Pinto Min Co.*, 85 P. 323, 324 (Colo. 1906). However, a lessor may be liable for the trespass of his or her lessees if the lessor aids, abets, encourages, or authorizes the lessee in the commission of the

trespass. *See Engler v. Hatch*, 472 P.2d 680 (Colo. Ct. App. 1970). Whether the lessor is liable under such a theory is dependent on the factual circumstances of each case. *See id.* Additionally, there is some suggestion in Colorado law that a lessor may be liable for a lessee's trespass if the lessor engages in some act that serves to ratify the trespass. *See Zobel v. Fannie Rawlings Mining Co.*, 111 P. 843, 844–45 (Colo. 1910).[6] The scope of *Zobel's* is ambiguous. There, the Court determined that there were two possible interpretations as to what was required to impute liability on the lessor for the lessee's actions under a "ratification" theory: (1) purposeful, post-hoc approval of the lessee's actions with the intent to adopt them as the lessor's own; or (2) knowing acceptance of proceeds resulting from another's trespass (requires actual knowledge).[7]

In opposing the Motion to Amend, Anadarko argues that the filing of the Proposed Amended Complaint would be futile because the new allegations contained therein fail to cure the deficiencies in the original Complaint, particularly that there is no allegation that Anadarko

---

[6] In *Zobel*, the owner of a mineral claim (Zobel) leased that claim to another individual (Ostrum) to develop. In exercising his leased rights, Ostrum exceeded the boundaries of Zobel's claim and extracted ore belonging to the defendant, the owner of an adjacent parcel. The defendant sued both Ostrum and Zobel in trespass, and a jury awarded damages to the defendant against both Ostrum and Zobel. On appeal, Zobel argued, among other things, that he could not be liable for Ostrum's trespass because "he was not aware, at the time the lessee committed the trespass, that any wrong to plaintiffs was being done." *Zobel*. 111 P. 843 at 844. The Colorado Supreme Court disagreed, finding that Zobel could be held liable for "those [trespasses] he did not know of at the time, but of whose perpetration he later had full knowledge [of and which] were ratified by him in knowingly accepting the fruits thereof." *Id.*

[7] The Court determined that a third option, purposeful receipt of property obtained by a lessee through trespass regardless of knowledge of the trespass, had been eroded into insignificance by a century's development of tort law and was, therefore, no longer a theory under which the Plaintiffs could proceed. *See* Opinion and Order Granting Motion to Dismiss **(#92)** at 9.

expressly directed or requested the lessees to use a particular drilling method, to occupy a certain amount of surface land that was beyond the scope of its rights, or that Anadarko aided, abetted, authorized, encouraged, or ratified the alleged trespass by the lessees. In response, the Plaintiffs contend that they have alleged facts sufficient to state a claim that Anadarko is liable for the lessees' trespasses under two theories: (i) Anadarko authorized or ratified the trespass by waiving the consent provision of the leases; and (ii) Anadarko ratified the trespass by retaining the royalties from the trespassing well even though it knew that the wells were vertical and, therefore, beyond the Surface Reservation.

Assuming, without deciding, that drilling vertical wells exceeds the scope of the Surface Reservation because it is not "convenient and proper" or "convenient and necessary,"[8] the Court concludes that the Plaintiffs have sufficiently stated a plausible claim. As explained *supra*, to hold a lessor liable for a lessee's trespass, a plaintiff is required to demonstrate that the lessor (i) aided, abetted, authorized, or encouraged the trespass; (2) ratified the trespass by adopting the lessee's actions as his or her own; or (3) ratified the trespass by accepting proceeds resulting from the trespass with actual knowledge that the proceeds were obtained as a result of the trespass. Here, under the pleading standards identified by *Twombly* and *Iqbal*, the facts alleged by the Plaintiffs are sufficient to state a plausible claim that Anadarko authorized or encouraged the trespass or ratified the trespass by knowingly accepting the proceeds thereof. As to the former, the Plaintiffs have alleged that Anadarko, with knowledge that directional drilling is

---

[8] The truth of this allegation will be determined by the trier of fact. At this juncture, the Court accepts the allegation as true, noting that although it is conclusory there is at least some basis on which the Plaintiffs base the contention, *i.e.*, that directional wells are economically feasible (although more expensive than vertical wells) and take up significantly less surface land than vertical wells.

8

generally feasible but never utilized by oil drilling companies unless the cost is borne by someone else, authorized wells to be drilled on the Plaintiffs land without requiring the lessees to utilize directional drilling and without obtaining the surface owners' permission to enter their land.[9] At this early stage in the litigation and under a Rule 12(b)(6) standard, this is sufficient to state a plausible claim that Anadarko's action constituted encouragement or authorization of the lessees' use of vertical, as opposed to directional, wells.

As to ratification through acceptance of proceeds, the Plaintiffs have alleged that Anadarko knew, through its general knowledge of drilling practices, the information supplied by the lessees in the requests for waivers and the division orders and the publicly available information from the Colorado Oil and Gas Conservation Commission, that the proceeds were a result of vertically rather than directionally drilled wells. Additionally, the Plaintiffs have alleged that despite this knowledge, Anadarko accepted the proceeds from the vertical wells.

Although Anadarko vigorously disputes that it knew of the vertical wells, arguing that the fact that Anadarko could have known or could have determined that the wells were vertical does not constitute actual knowledge, such argument is suited for later proceedings in this case including a motion for summary judgment or trial. Because the allegations satisfy the standard applied under Fed. R.Civ. P. 12 (b)(6), amendment of the complaint is not futile.

---

[9] In the Motion to Amend, the Plaintiffs continually equate the waiver of the consent provision in the lease with authorization to drill vertical wells, in violation of the Surface Reservation. Such is not necessarily the case as the leases (submitted by the Plaintiffs) are themselves expressly limited by the Surface Reservation; thus, a waiver of the consent provision does not necessarily authorize the use of the drilling methods that go beyond the scope of the Surface Reservation as the waiver does not impact the Surface Reservation provision in the lease. However, when combined with the other allegations as to Anadarko's knowledge of the use of and prevalence of vertical drilling this is sufficient to state a claim at this juncture.

**IT IS THEREFORE ORDERED** that

(1)    The Plaintiffs' Motion to Amend **(#93)** is **GRANTED**.

(2)    The Clerk of Court is directed to reopen the case.

(3)    The Plaintiffs are directed to re-file the Proposed Amended Complaint as the First Amended Complaint and the Defendants shall timely file a response.

Dated this 21st day of July, 2011

                                          **BY THE COURT:**

                                          Marcia S. Krieger
                                          United States District Judge