**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

**Civil Action No. 09-cv-02293-MSK-MJW**

**A-W LAND CO., LLC;
VERNON JESSER;
MARY JESSER;
KENT J. McDANIEL;
DEANNA R. McDANIEL;
MARVIN BAY; and
MILDRED BAY, Co-Trustees of the Bay Family Trust, individually and on behalf of all
others similarly situated,**

   **Plaintiffs,**

**v.**

**ANADARKO E&P COMPANY LP f/k/a RME PETROLEUM COMPANY; and
ANADARKO LAND CORPORATION f/k/a RME LAND CORP.,**

   **Defendants.**
_____

**OPINION AND ORDER SUSTAINING OBJECTIONS AND GRANTING
MOTION FOR CLASS CERTIFICATION**
_____

   **THIS MATTER** comes before the Court pursuant to the Plaintiffs' Objections (**# 115**) to

the May 3, 2012 Recommendation (**# 114**) of the Magistrate Judge that the Plaintiffs' Motion for

Class Certification (**# 46**) be denied, the Defendants' response (**# 116**), and the Plaintiffs' reply

(**#118**).

<u>**FACTS**</u>

   The Court has previously addressed the general factual background on this action in

previous Orders, including those issued on September 29, 2010 (**# 92**) and July 21, 2011 (**# 99**).

In summary, more than a century ago, the Union Pacific Railroad acquired large tracts of

property.  It sold the surface rights to that property to various buyers (including, ultimately, the

Plaintiffs and the putative class members herein), but reserved ownership of sub-surface minerals, including oil and gas reserves.  The terms of that reservation of rights entitled the Railroad to use as much of the surface land as was "convenient and necessary" (or, in certain circumstances, "convenient and proper") to access and drill mines or wells to reach underground mineral deposits.

The Railroad then entered into agreements with oil and gas producers to lease the Railroad's rights to the subsurface minerals.  Mindful of the "convenient and necessary/convenient and proper" limitation in the reservation of rights, and of the fact that traditional drilling techniques would often exceed the scope of that reservation, the Railroad would enter into agreements with the owners of the surface estate to obtain permission to use the amount of land desired by the producers; in exchange, the Railroad would agree to pay the surface owner a portion of the royalties the Railroad received from the producer.

In 2000, the Defendants (collectively, "Anadarko") acquired the Railroad's mineral rights. It continued the practice of leasing those rights to oil and gas producers, but ceased the practice of entering into agreements with the surface estate owners, as well as the practice of paying a portion of the royalties to those surface estate owners.  In the absence of an agreement with the surface owner granting greater rights, Anadarko's[1] use of the surface estates must therefore be limited to the amount of land falling with the "convenient and necessary/convenient and proper" limitation in the Railroad's original reservation of rights.

---

[1]Technically, it is the lessees of Anadarko's mineral rights that are using the surface estates, not Anadarko itself.  However, those lessees do so through a power granted to them by Anadarko, and for purposes of efficiency in this Order, the Court will indulge in the fiction that it is Anadarko itself using the surface lands.

The Plaintiffs here, owners of surface estates on which Anadarko is drilling new wells, contend that Anadarko's activities exceed the scope of the Railroad's reservation and constitute a trespass. Specifically, the Plaintiffs contend that Anadarko's drilling of vertical wells exceeds the scope of the reservation of rights when directionally-drilled wells would require a smaller footprint and thus minimize intrusion upon the surface estate.

The current operative pleading, the Amended Complaint (#**100**), asserts the following claims for relief: (1) common-law trespass, based on Anadarko's using an excessive amount of surface land in violation of the reservation of rights; (2) a claim for declaratory relief that drilling any more than one vertical well is excess use of the surface in violation of the reservation of rights (and fixing a royalty to be paid for such violation); and (3) a request for an accounting of the royalties that would be payable under the second claim.

The Plaintiffs move **(# 46)** to certify a class according to the following definition:

> All persons and entities owning surface rights on land in the certain counties which make up the Wattenberg Field in Colorado, in which Anadarko owns the oil and gas mineral estate in the same land, which were acquired by Anadarko from Union Pacific Resources Group, Inc. or its affiliates, and on which lands Anadarko or its lessees have after the year 2000 or will in the future drill unnecessary vertical wells for production of oil and gas.
>
> For purposes hereof, unnecessary vertical well means more than one vertical well per quarter section of land.
>
> The defined Class excludes: (1) any person or entity who is a member of an Indian tribe; (2) the United States of America; (3) Anadarko, its affiliates, its predecessors-in-interest, and its respective employees, officers and directors; and (4) any person or entity who is currently a party to a standard Surface Owner's

Agreement[2] with Anadarko or its predecessors, which is still in effect.

The Defendants oppose **(# 63)** the requested certification, arguing that: (i) there are no significant common questions of substantive fact, insofar as each individual allegation of trespass will require a wealth of individualized factual determinations as to the nature of the intrusion, the scope of the intrusion, etc.; (ii) proof of damages will present individualized questions of fact as to the nature of damages suffered, based on the available uses of the trespassed-upon surface estate; (iii) any alleged commonality of "background" facts are irrelevant to issues of liability or damages; and (iv) the Plaintiffs' expert opinions as to the Fed. R. Civ. P. 23(a) factors is "unreliable" and that the Plaintiffs cannot establish the typicality requirement of Rule 23(a)(3).

The Court referred the matter to the Magistrate Judge to issue a Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  On May 3, 2012, the Magistrate Judge Recommended **(#114)** that the motion be denied.  The Magistrate Judge found that: (i) the requirement of numerosity was not satisfied because the Plaintiffs' expert did not consider certain relevant factors, rending his analysis unreliable; (ii) the requirement of commonality was not present, insofar as the court would be required to make numerous individualized assessments of facts pertinent to the degree of trespass; (iii) the representative Plaintiffs' claims were not "typical" because of the lack of commonality; (iv) that the Plaintiffs' counsel would deliver adequate representation; and (v) that individual questions predominate over common questions under Rule 23(b)(3).

---

[2]The Court understands this to refer to an agreement whereby the surface owner has been granted a royalty pursuant to the Railroad's prior practice.

4

The Plaintiffs filed timely Objections (**# 115**) to the Magistrate Judge's Recommendation.  The Objections largely restate the Plaintiffs' arguments in favor of class certification.

## ANALYSIS

**A.  Standard of review**

The Court reviews the objected-to portions of the Recommendation *de novo*.  Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b).  The Plaintiffs' Objections run to essentially every adverse determination of the Magistrate Judge, thus warranting *de novo* review of the entirety of the Plaintiffs' motion.

**B.  Class certification**

Pursuant to Fed. R. Civ. P. 23, the Court may certify a class only upon a finding that all four requirements of Rule 23(a) are met.  Those requirements are that: (i) the class is so numerous that joinder of all members is impracticable; (ii) there are common questions of law or fact common to the class; (iii) the claims or defense of the representative plaintiffs are typical of the claims of the class; and (iv) the representative plaintiffs will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(1)-(4).  In addition, the Plaintiffs must also demonstrate that at least one of the three alternatives recited in Rule 23(b) are present: (i) that separate action would create a risk of inconsistent adjudications resulting in conflicting consequences for Anadarko or other putative class members; (ii) that Anadarko has acted on grounds that apply generally to the class; or (iii) that common questions of law or fact predominate over individualized questions, making a class action a superior method to resolve the matter.  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010). The

Plaintiffs bear the burden of proof on each of these requirements.  *Id.*

    1.  Rule 23(a) factors

        a.  common questions of law or fact

The Court begins with Rule 23(a)(2)'s requirement that the class members share at least one common question of law or fact.  *DG*, 594 F.3d at 1195.  Class members must "possess the same interest and suffer the same injury."  *Trevizo v. Adams*, 455 F.3d 1155, 1163 (10th Cir. 2006), *citing General Telephone Company v. Falcon*, 457 U.S. 147 (1982).  Commonality exists if class members differ factually but challenge the application of a commonly-applied policy. *J.B. ex rel Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999).  The crux of the commonality examination is not simply that there are commonalities among the potential class members, but rather, whether a classwide proceeding will be efficacious in "generat[ing] common **answers** apt to drive the resolution of the litigation."  *See e.g. Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (emphasis in original).

The Plaintiffs' motion specifically identifies four questions that they contend are common among all class members: (i) "whether Anadarko made the decision to discontinue the practice" of entering into agreements with surface owners; (ii) "whether Anadarko . . . predominantly use[s] the vertical drilling method in [its] drilling operations on class members' surface lands"; (iii) "whether Anadarko's . . . use of the vertical method instead of the less intrusive directional drilling method is in excess of the [terms of the surface reservation]"; and (iv) "whether the appropriate compensation" for any trespass is the royalty rate previously paid by the Railroad.       The Court summarily rejects the notion that questions (i), (ii), or (iv)

would support class certification.  Questions (i) and (ii) inquire into questions of Anadarko

policy that are irrelevant to the trespass claims that underlie this action.  Question (iv) is simply a

restatement of the Plaintiffs' requested remedy.

Question (iii), however, initially appears to present a question of law or fact that is

common to all potential claims of trespass.  As the Court understands the claims in this action,

every surface owners' claim of trespass is based on the language of the surface reservation,

particularly that mineral exploration activities will not occupy more land than is "convenient and

necessary/convenient and proper."[3]  The central premise of the Plaintiffs' claims is that

directional, rather than vertical drilling, permits a smaller surface footprint, thus making the

drilling of multiple vertical wells on a specified section of land "unnecessary" or "improper,"

and thus, a violation of the surface reservation. Thus, the question of whether the drilling of

multiple vertical wells on a single section of land violates the terms of the surface reservation is

a question would appear to be common to all members of the class.

But that does not end the analysis.  The surface reservation itself permits the occupation

of the surface estate to the extent "convenient and necessary" or "convenient and proper" for the

drilling and operation of oil and gas wells.  (The Plaintiffs do not appear to allege that these

terms have some unique significance in oil and gas law, and thus, the Court assumes that they

will be applied according to their common dictionary meaning.)  The drilling techniques or other

---

[3]Colorado law grants mineral estate owners some privilege to occupy a portion of the
surface estate in order to exploit mineral resources.  *Burkett v. Amoco Production Co.*, 85 P.3d
576, 578 (Colo. App. 2003).  The Court does not understand the Plaintiffs to be asserting any
trespass claims premised upon Anadarko exceeding the legally-recognized privileges held by a
mineral estate owner, except to the extent that conduct **also** exceeds the terms of the surface
reservation.

incidents of surface occupancy that may be "convenient and necessary" on one parcel may, due to geographic, geologic, or other features distinct to that parcel, differ from what would be "convenient and necessary" on a parcel with different features.  This suggests that question (iii) cannot be resolved in a single way applicable to all Plaintiffs; rather, it suggests that the question will require an individualized determination for each surface estate owner, based on the particular characteristics of each parcel.

Having concluded that the four specifically-identified questions stated in the Plaintiff's motion do not support a finding of commonality under Rule 23(a)(2), the Court turns to the Plaintiffs' other filings to see if a sufficiently common question of law or fact may be found therein.  Without extensively reciting the arguments made in the Plaintiffs' briefing, the Court finds that the Plaintiffs have identified several questions of **law** that are arguably common to all potential class members in this case.  Those questions include: (i) whether Anadarko can be held liable for trespasses committed by its lessees; (ii) whether permits issued by the Colorado Oil and Gas Conservation Commission operate to license conduct that would otherwise exceed the terms of the surface reservation; and (iii) whether the terms of the surface reservation are ambiguous and (iv) how they should be interpreted.  The Court finds that these questions of law are common to all class members, as the determination of these matters will affect all class members in the same way.

However, the Court is not persuaded that there are any common questions of **fact** among the class members.  The extent to which Anadarko has gone upon each surface owner's land, and the degree to which that intrusion was or was not "convenient and necessary/convenient and proper" under the particular circumstances must necessarily be assessed on an individualized

8

basis; similarly, the extent to which each surface estate owner is entitled to compensation for such trespasses will necessarily vary based on the circumstances.

### b. typicality and fair representation

Next, the Court considers whether the claims of the representative parties are typical of the claims of the class under Rule 23(a)(3).  At least with regard to the common questions of law discussed above, the issues either legal defenses that Anadarko might raise or matters of interpretation of contract language that is common to all class members.  Thus, it appears that all class members would seek to have those issues resolved in the same ways.  As a result, the Court finds that the representative Plaintiffs' positions and arguments on those claims will be typical of all class members.

Moreover, the Court is aware of no facts that would suggest that the representative Plaintiffs would not fairly represent the interests of the class members under Rule 23(a)(4).

### c. numerousity

The Court will address the numerousity requirement of Rule 23(a)(1) only briefly.  The Plaintiffs have submitted evidence that, based on a sampling of property and oil and gas drilling records, there are more than 1,300 potential class members.  Anadarko contends that the methodology underlying this conclusion is flawed, but does not offer evidence of its own as to what it believes is the number of potential class members.

The Court finds that, even if the Plaintiffs' expert's opinion is discounted to some abstract degree to reflect certain imprecisions or unwarranted assumptions in his sampling methodology, the fact remains that there appears to be a large, albeit numerically unspecific, number of parcels subject to the surface reservation.  If the Court were to find the Plaintiffs'

expert's opinion so extensively beset by sampling errors that it overestimated the number of potential class members by a whopping 90%, that would still leave more than 100 potential class members, a number that certainly prevents effective joinder here. Moreover, the Court notes that the parcels at issue are dispersed over a large geographic area, are largely rural, and of some significant distance from the courthouse, further suggesting that a class-based resolution of the common legal issues is preferable to attempting to join the affected parties.

Accordingly, the Court finds that the Plaintiffs have established that the elements of Rule 23(a) are met here, but only with regard to certain common questions of law as set forth above.

## 2. Rule 23(b) factors

Thus, the Court turns to whether the Plaintiffs have carried their burden of showing that one or more of the requirements of Rule 23(b) are satisfied.

Rule 23(b) requires a party seeking class certification to show either: (i) separate actions by class members would create a risk of inconsistent adjudications affecting the rights or obligations of class members or Anadarko; (ii) that Anadarko has acted or refused to act on grounds applying generally to the class, such that class-wide injunctive relief is appropriate; or (iii) that the common questions of fact or law predominate over individual questions. Fed. R. Civ. P. 23(b)(1)-(3).

The Court finds that class certification is warranted under the first and second provisions of Rule 23(b), but not the third. Because the common questions are questions of law, findings by the Court that Anadarko is liable for its lessee's trespasses in some individual cases but not in others, or that the "convenient and necessary" surface reservation has a particular meaning in some cases but a different meaning in others, is the type of inconsistent adjudication bedeviling both parties that Rule 23(b)(1) attempts to avoid. Similarly, the Court finds that to the extent

that the parties seek an adjudication of the viability of certain legal defenses raised by Anadarko on a class-wide basis, relief that declares those defenses to be unavailable might be proper under Rule 23(b)(2).  However, the Court finds that the limited extent of the common questions of law addressed above do not predominate over the substantial individualized factual determinations that must be made on a case-by-case basis with regard to whether the particular use made by Anadarko of a particular parcel constitutes a breach of the terms of the surface reservation, as well as the individualized determination of what damages might be appropriate for such a trespass.

3.  <u>Certification</u>

Accordingly, the Court finds that certification of a class is warranted, but only for the purposes of addressing the specific legal questions, identified above, that are common to all class members.  To effectuate this purpose, the Court issues the following orders:

a.  <u>case plan</u>

Rule 23(d)(1)(A) permits the Court to, upon certification, "determine the course of proceedings and prescribe measures to prevent undue repetition or complication in presenting evidence or argument."  Accordingly, the Court advises the parties that it intends to conduct this litigation as follows.

First, the action is bifurcated to first address the common legal issues identified above – *i.e.* Anadarko's liability for any trespasses committed by its lessees, the extent to which regulatory permits confer a privilege to exceed the surface reservation, and the degree to which the "convenient and necessary/convenient and proper" language of the surface reservation requires interpretation.  The Court directs that the Magistrate Judge, with the assistance of the parties, devise a revised Scheduling Order that facilitates discovery and dispositive motions

relating solely to these issues.

Once dispositive motions relating these common legal issues have been resolved, if further proceedings remain necessary, the Court will then dissolve the class and permit those parties wishing to proceed on substantive trespass claims to file individual (or properly joined) claims for such relief. Once the deadline has passed for such filings, the Court will convene a Rule 16 conference to address how to proceed, but it is the Court's expectation that each of those claims shall then proceed through individualized discovery and dispositive motion practice, and, if necessary, individualized trials.

b. class definition

The Court finds that there is some redundancy in the Plaintiffs' proposed class definition. Specifically, the proposed definition needlessly contains the phrase "unnecessary vertical wells," which it then proceeds to immediately define as "more than one vertical well per quarter section of land." It is the Court's intention to eliminate that redundancy by removing the former phrase and substituting the latter in its place. Accordingly, pursuant to Rule 23(c)(1)(2), the Court defines the class as follows:

> All persons and entities owning surface rights on land in the certain counties which make up the Wattenberg Field in Colorado, in which Anadarko owns the oil and gas mineral estate in the same land, which were acquired by Anadarko from Union Pacific Resources Group, Inc. or its affiliates, and on which lands Anadarko or its lessees have after the year 2000 or will in the future drill more than one vertical well per quarter section of land.

> The defined Class excludes: (1) any person or entity who is a member of an Indian tribe; (2) the United States of America; (3) Anadarko, its affiliates, its predecessors-in-interest, and its respective employees, officers and directors; and (4) any person or entity who is currently a party to a standard Surface Owner's Agreement with Anadarko or its predecessors, which is still in effect.

c. Appointment of class representative and counsel

There being no apparent requests from any other putative representatives and class

counsel, pursuant to Fed. R. Civ. P. 23(c)(1)(B) and (g), the Court appoints the named Plaintiffs,

A.W. Land Co. LLC, Vernon Jesser, Mary Jesser, Kent J. McDaniel and Deanna R. McDaniel,

and Marvin Bay and Midred Bay as trustees of the Bay Family Trust, as the class

representatives, and George Barton, Stacy Burrows, and Lance Astrella as class counsel.

d. Notice to class

Pursuant to Rule 23(c)(2)(A), the Court directs that, within 45 days of the date of this

Order, class counsel shall endeavor to identify all class members and provide them notice of this

action.  Although the Court does not find that class certification pursuant to Rule 23(b)(3) is

warranted, it directs that notice to the class members shall otherwise comply in all respects with

the requirements of Rule 23(c)(2)(B), and shall include a copy of the Complaint and a copy of

this Order.  Upon giving such notice to the class members, class counsel shall file a notice with

this Court advising of the means and contents by which such notice was given.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Objections **(# 115)** are **SUSTAINED IN PART**

and **OVERRULED IN PART**.  The Court **DECLINES** to adopt the Magistrate Judge's

Recommendation **(# 114)**, and **GRANTS** the Plaintiffs' Motion for Class Certification **(# 46)** on

the terms set forth herein.  The parties shall jointly contact the Magistrate Judge to arrange for a Scheduling Conference and issuance of a Scheduling Order consistent with the case plan discussed above.

Dated this 26th day of September, 2012

BY THE COURT:

Marcia S. Krieger
United States District Judge

14