IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-02293-MSK-MJW

A-W LAND CO. LLC,
VERNON JESSER and MARY JESSER,
KENT J. MCDANIEL and DEANNA R. MCDANIEL, and
MARVIN BAY and MILDRED BAY, co-trustees of the Bay Family Trust,
*individually and on behalf of all others similarly situated*,

Plaintiffs,

v.

ANADARKO E&P ONSHORE LLC, and
ANADARKO LAND COMPANY,

Defendants.

**ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND
AMENDED CLASS ACTION COMPLAINT
(Docket No. 193)**

**MICHAEL J. WATANABE
United States Magistrate Judge**

This is a class action, asserting that Defendants trespassed by exceeding the

scope of their right to use Plaintiffs' surface estates while drilling Defendants' mineral

estates. Plaintiffs have moved to file a Second Amended Class Action Complaint, and

the motion is fully briefed. (Docket Nos. 193, 197, & 202.) Chief Judge Marcia S.

Krieger referred the motion to the undersigned. (Docket No. 194.)

I have reviewed the parties' filings, taken judicial notice of the court's file, and

considered the applicable Federal Rules of Civil Procedure, statutes, and case law.

Now being fully informed, I make the following findings of fact, conclusions of law, and order that Plaintiffs' motion be granted.

## BACKGROUND

As described by Chief Judge Krieger in June 2013:

> The Court assumes the reader's familiarity with the proceedings to date, and thus offers only a brief summary. The Plaintiffs are owners of the surface estates of various parcels of property, and the Defendants own the mineral estates beneath those parcels. By virtue of the original grantor's reservation of rights (the "surface reservation"), which severed the surface and mineral estates, the Defendants enjoy a license to use as much of the surface estate as is "convenient and necessary" or "convenient any proper" to exploit the mineral estates. The Plaintiffs contend that the Defendants' actions on the surface lands have exceeded that license, giving rise to liability in trespass.
>
> The Plaintiffs moved to certify this matter as a class action under Fed. R. Civ. P. 23(b)(3) essentially encompassing all surface estate owners whose ownership derives from the common grantor. In a September 27, 2012 Opinion and Order, this Court granted in part and denied in part the Plaintiffs' motion. Specifically, the Court found that: (i) there were certain questions of law common to all putative class members, such as whether the Defendants could be held liable for trespasses committed by its lessees and what interpretation should be given to the language of the surface reservation; (ii) that questions of fact relating to whether the Defendants' use of the surface estate on any given parcel was or was not in compliance with the terms of the surface reservation were not common to the class and required individualized determination; (iii) that the remaining factors of Rule 23(a) supported class certification; and (iv) that the requirements of Rule 23(b)(1) and (2) were present, but not the requirements of Rule 23(b)(3) – that is, that there was a risk of inconsistent adjudications on the questions of law and that certain class-wide declaratory and injunctive relief could be appropriate, but that the common questions of law or fact did not predominate over the individualized questions. Accordingly, the Court bifurcated the case to first address the common issues of law identified by the Court, certifying a class for that purpose, but directing that upon determination of those common issues of law, the class would be decertified and the various surface estate owners could then proceed individually on their own unique trespass claims.

(Docket No. 125, pp. 1–2 (internal citations to record omitted).)

> The "certain questions of law common to all putative class members" are:
>
> (i) whether Anadarko can be held liable for trespasses committed by its lessees; (ii) whether permits issued by the Colorado Oil and Gas Conservation Commission operate to license conduct that would otherwise exceed the terms of the surface reservation; and (iii) whether the terms of the surface reservation are ambiguous and (iv) how they should be interpreted."

(Docket No. 120, p.8.)  In October 2013, after finding that the discovery engaged in during the class-certification stage created a sufficient record for resolving these legal questions, I entered a scheduling order setting a briefing schedule but no further discovery.  (Docket Nos. 135 & 139.)  The parties have fully briefed these class-wide legal questions and await the Court's rulings.

On June 17, 2014, the Court approved the parties' proposed notice to class members.  (Docket Nos. 174 & 181.)  Class counsel mailed the notice the following day, giving class members 60 days to opt-out.  (Docket No. 186, ¶¶ 7–8.)  Out of 216 notice-class members agreed upon by the parties, three opted out.  (*Id.* ¶¶ 7, 9.)  Accordingly, this case now sits with 213 class members, who will be bound by the Court's rulings on the class-wide legal questions.  If the Court's rulings on those questions leave any potential for liability, the class will be de-certified and those 213 plaintiffs will be allowed to proceed with individual claims against Defendants.

After discussing the case with Chief Judge Krieger in early 2014, I ordered a new scheduling conference.  (Docket No. 175.)  On June 27, 2014, I entered a new Scheduling Order.  (Docket No. 183.)  That order provided deadlines for discovery into individual claims and damages, for expert witnesses, and for dispositive motions.  As relevant here, the Scheduling Order also contained the following section:

    a.    Deadline for Joinder of Parties and Amendment of Pleadings:

        Sixty (60) days after the deadline to opt out of the Class, which is October 21, 2014. This deadline applies to any claims of Class Member Plaintiffs.

(Docket No. 183, p.6.) During the scheduling conference, the discussion focused on how to begin developing individual claims for the second stage of these bifurcated proceedings, on the assumption that the case would go forward following Chief Judge Krieger's rulings on the class questions. (Docket No. 184, pp. 23–27.) The central difficulty was how to keep the case moving forward if—as has come to pass—the period for opting-out of the class closed without the Court first ruling on the class-wide legal questions. The parties and I agreed to set a hard deadline for amending the pleadings, with the understanding that discovery (by contrast) may need to be extended.

Plaintiffs' motion to file the proposed Second Amended Class Action Complaint was filed on October 20, 2014. The factual allegations are unchanged for all material purposes. That said, Plaintiffs have made a material change to their claims for relief. In the First Amended Class Action Complaint, Plaintiffs claimed that the appropriate remedy to compensate them for their damages was 2.5% of the royalties earned by improper wells on each claimant's land (the amount traditionally paid by Defendants' predecessor mineral-estate owner). Chief Judge Krieger's rulings in this case have called into question the appropriateness of Plaintiffs' proposed remedy. In response, the proposed Second Amended Class Action Complaint proposes two[1] alternative

---

[1] Technically, it claims four remedies. In addition to those discussed herein, it asks for declaratory relief and an equitable accounting. These are also claimed in the First Amended Class Action Complaint and have no real relevance to this motion. For the sake of simplicity, I will leave them out of this discussion.

remedies: restitution for Defendants' unjust enrichment, and legal damages. For purposes of restitution, the Second Amended Class Action Complaint identifies Defendants' benefit as royalties that otherwise would have been paid to landowners (*i.e.*, the same 2.5% measure as was used the First Amended Class Action Complaint, stated in a less exact manner) plus the cost savings from using vertical drills instead of clustered directional drills. For purposes of legal damages, the Second Amended Class Action Complaint makes no effort to quantify or measure the remedy in any particular way.

## **DISCUSSION**

Federal Rule of Civil Procedure 15 governs the amendment of pleadings. Because Plaintiffs have already amended once, and because Defendants oppose the most recent amendment, Plaintiffs must seek the Court's leave to file the Second Amended Class Action Complaint. Fed. R. Civ. P. 15(a). Pursuant to Rule 15, "[t]he court should freely give leave when justice so requires." *Id.* at 15(a)(2). "The purpose of the Rule is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" *Minter v. Prime Equip. Co.,* 451 F.3d 1196, 1204 (10th Cir. 2006). Thus,

> "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"

*Id.* (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

I see no grounds to deny leave and will therefore grant Plaintiffs' motion. Defendants put forward a number of arguments to the contrary; I will discuss each argument in turn.

**I.     Futility of Amendment**

Defendants make two arguments as to why Plaintiffs' Second Amended Class Action Complaint would be futile: first, they argue that equitable remedies are not available for a mineral estate-holder's trespass on the surface estate; second, they argue that Defendants have realized no cost savings because their drilling leases impose all costs on the lessees.

Defendants' first argument misstates the law. Colorado permits plaintiffs in trespass actions to claim restitution as an alternative to damages, so long as the plaintiff ultimately receives only one recovery per harm. *See Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1205–07 (Colo. App. 2009) (citing 1 George E. Palmer, *Law of Restitution* § 2. 1, at 51 (1978)). Further, although restitution is normally measured by the loss to plaintiff (a measure identical to the legal damages for trespass), a defendant who trespasses in knowing disregard of the plaintiff's rights can be compelled to disgorge the full benefit or gain accrued to the defendant. *See id.* (applying "improper, deceitful, or misleading conduct" standard from *DCB Constr. Co. v. Central City Dev. Co.,* 965 P.2d 115, 122 (Colo. 1998), but finding defendant's gains already stripped by award of "lost profits" as part of consequential damages); *Restatement (Third) of Restitution* § 40 cmt. b (2011) ("[A] conscious wrongdoer will be stripped of gains from unauthorized interference with another's property . . . By contrast, innocent trespassers and converters are liable in restitution for the value of what they have acquired—usually

measured by the cost of a license—but not for consequential gains."). Plaintiffs' factual allegations are sufficient to allege conscious wrongdoing by Defendants. (*Cf.* Docket No. 99, p.8 ("[T]he facts alleged by the Plaintiffs are sufficient to state a plausible claim that Anadarko authorized or encouraged the trespass or ratified the trespass by knowingly accepting the proceeds thereof.").) Thus, if Plaintiffs prove their case, restitution might well be measured by Defendants' gains rather than Plaintiffs' losses. *See Restatement (Third) of Restitution* § 40 cmt. c, illus. 6.

Defendants cite a number of cases to the contrary, but none are on point. For example, Defendants cite cases discussing the measure of legal damages, rather than the measure of equitable relief. *See, e.g.*, *Kroulik v. Knuppel*, 634 P.2d 1027 (Colo. App. 1981). These cases have no relevance here. As to equitable remedies, Defendants rely heavily on *Beck v. Northern Natural Gas Co.*, 170 F.3d 1018 (10th Cir. 1999), for the proposition that a plaintiff's equitable relief is limited to the fair rental value of the displaced property right—the same measure as legal relief. But Defendants' argument concedes the point that equitable relief, however measured, is available. Indeed, the court expressly *affirmed* the applicability of unjust enrichment as an equitable remedy. *Id.* at 1022–23. And nothing in *Beck* suggests that the equitable relief can never, as a matter of law, be measured by defendants' gains. Rather, the Court held—unremarkably—that the same injury could not be compensated twice even though plaintiffs had won on two alternative theories of liability.[2] *Id.* at 1024. Here, it is

---

[2] Further, there's no indication in the opinion that the plaintiffs asked for disgorgement of defendant's profits *based on defendant's conscious wrongdoing.* The Tenth Circuit did discuss whether disgorgement of defendant's profits was called for under *Short v. Wise*, 718 P.2d 604 (Kan. 1986), in which the plaintiff recovered separate amounts for both

clear that no class member should be able to recover *both* damages *and* restitution (however measured). It is likewise clear that any restitution might ultimately be measured by Plaintiffs' losses. But that does not mean restitution measured by Defendants' gains is categorically unavailable.

Defendants' second argument for futility is that, as a factual matter, Defendants receive no cost savings from vertical drilling that might be disgorged because their drilling leases impose all costs on the lessees. This argument fails as a matter of common sense and as a matter of procedure. First, assuming Defendants' averments to be true, it nonetheless cannot be the case that Defendants receive literally no benefit when their lessees drill at lower costs. If nothing else, a lessee would be willing to pay more for a lease that provides the lessee the flexibility to lower its costs, and Defendants can therefore demand more when negotiating such leases. Second, this argument is premised on facts outside the proposed complaint—and it is therefore a discussion more appropriate for summary judgment. The proposed Second Amended Class Action Complaint is not futile on its face; it plausibly alleges that Defendants *do* incur cost savings, and Defendants will have to prove otherwise at a procedurally proper point in time.

II.     **Undermining the Court's Orders to Date**

Defendants next argue that the Second Amended Class Action Complaint would undermine the orders that have been entered so far and might require revisiting

---

legal damages and unjust enrichment. But as the Tenth Circuit's discussion makes clear, in *Short* the harm warranting restitution was distinct from the trespass injury; it arose from the defendant's related but separate diversion of business profits. No such separate harm existed in *Beck*, and the case was thus inapposite.

otherwise settled questions—most importantly, the fully briefed and pending class-wide legal questions.

This argument is easily resolved. While it is true that unjust enrichment can sometimes be used as an independent basis for liability, rather than as an alternative remedy, Plaintiffs have not attempted to add such a claim. The Second Amended Class Action Complaint clearly identifies its theory of liability as a trespass theory; it does not claim that Defendants are also liable for unjust enrichment independent of any trespass liability. Further, even if there had been ambiguity about Plaintiffs' theories, those ambiguities would be resolved by Plaintiffs' express disclaimer. (Docket No. 202, p. 13.) The Court considers this a waiver by class counsel and will be ready to enforce it should Plaintiffs attempt to impose liability absent trespass liability.

Without any new theory of liability, it is difficult to see how the Second Amended Class Action Complaint undermines the Court's orders to date. The class has been certified for the limited purpose of resolving certain legal questions, all of which pertain to trespass liability and none of which pertain to remedies or damages. Defendants' concern is not unreasonable, but it does not warrant denying Plaintiffs' motion.

### III.   Untimely and Unduly Prejudicial

Finally, Defendants argue that the motion to amend is untimely and unfair. According to Defendants, Plaintiffs have been aware of all necessary facts to make this pleading for years now, and there is no justification for waiting until the last minute—one day before the deadline in the Scheduling Order—before filing. Further, Defendants argue, Plaintiffs' new complaint "massively expand[s] the scope of this case," putting Defendants in the position of having to re-depose many witnesses and engage in "a

wide-ranging investigation of the economics of all mineral development activities in Weld County of Defendants, their parent and affiliate companies, and their lessees." (Docket No. 197, pp. 15, 17–18.)

Defendants' arguments are exaggerated. As discussed above, the Second Amended Class Action Complaint does not add any new theories of liability, nor does it add any material factual allegations. It changes Plaintiffs' original requested remedy—2.5% of royalties from improper wells, claimed to be the traditional payment in such circumstances—to a less-precise claim for restitution measured by Defendants' gains or in the alternative for legal damages. This is not a prejudicial change, for several reasons.

*First*, although the 2.5%-of-royalties figure was easy shorthand, it was not conceptually different from disgorgement of wrongful gains. Plaintiffs have been asking for a cut of Defendants' profits from the very onset of this case; that they now choose to use the word "restitution" is, as Plaintiffs say, a clarification and not a change. *Second*, Chief Judge Krieger has already held that the damages phase of this action will require individualized proceedings, presumably because she doubts the appropriateness of a blanket 2.5%-of-royalties remedy. Plaintiffs can hardly be faulted for amending the pleadings to reflect Chief Judge Krieger's concerns. If Defendants' discovery burden will be greater due to the need for individualized determinations, it is only because Defendants successfully argued against class relief. *Third*, Defendants' level of knowledge or intent with respect to its lessee's trespasses, and Defendants' profits or proceeds therefrom, are already at issue in this case for purpose of determining Defendants' vicarious liability. The factual development required for the Second

Amended Class Action Complaint's remedies should overlap significantly with factual develop already done or underway, and therefore should not add as much to the discovery burden as Defendants suggest.  *Finally*, although this case is five years old, "merits" discovery began a mere six months ago, with four full months remaining under the Scheduling Order as currently amended.  The parties have plenty of time yet.

As for the timeliness of Plaintiffs' motion, it might well be the case that they could have filed four months ago, when the class closed.  But the class-certification order and the Scheduling Order contemplate that the class will be de-certified at some point and individual cases will go forward.  It was not unreasonable for Plaintiffs to wait, hoping for an order on the class questions to put this case in a clearer procedural posture.

## ORDER

**WHEREFORE**, for the foregoing reasons, it is **ORDERED** that Plaintiffs' Motion for Leave to File Second Amended Class Action Complaint (Docket No. 193) be **GRANTED** and that the Second Amended Class Action Complaint (Docket No. 193-1) be **ACCEPTED FOR FILING**.


Dated: December 12, 2014          */s/ Michael J. Watanabe*
       Denver, Colorado           Michael J. Watanabe
                                  United States Magistrate Judge