IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-02293-MSK-MJW

A-W LAND CO. LLC,
VERNON JESSER and MARY JESSER,
KENT J. MCDANIEL and DEANNA R. MCDANIEL, and
MARVIN BAY and MILDRED BAY, co-trustees of the Bay Family Trust,
*individually and on behalf of all others similarly situated*,

Plaintiffs,

v.

ANADARKO E&P ONSHORE LLC, and
ANADARKO LAND COMPANY,

Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO
COMPEL DISCOVERY (Docket No. 229), AND GRANTING PLAINTIFF'S SECOND
MOTION TO COMPEL DISCOVERY (Docket No. 255)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

In this class action, Plaintiffs allege that Defendants' lessees trespassed by using

oil and gas drills with a larger footprint on the surface estate than Defendants were

legally entitled to use.  A class has been certified to resolve certain common legal

questions—but once those questions are resolved, the case will be decertified and will

proceed to the merits as individual cases (if it goes forward at all).  As the parties await

ruling on the common questions, they have begun merits discovery—and Plaintiffs have

now filed two motions to compel discovery over Defendants' objections.

2

The Court has reviewed the parties' filings (Docket Nos. 229, 230, 236, 238, 253, 254, 255, 256, & 265); taken judicial notice of the court's entire file in this case; and considered the applicable Federal Rules of Civil Procedure, statutes, and case law. Now being fully informed, the Court makes the following orders.

<u>**Plaintiffs' [First] Motion to Compel Discovery**</u>

Plaintiffs' first motion to compel (Docket No. 229) concerns their August 9, 2014, discovery requests and can be divided into two categories: requests for which Defendants dispute relevance, and requests for which Defendants dispute custody and control over responsive documents.

**I.**    <u>**Relevancy Objections**</u>

Defendants make relevance objections to interrogatories 3, 4, 5, 6, 7, 12, 16, and 17, plus document request 1.  Those requests, and Defendants' responses, are:

> **Interrogatory No. 3.  Identify and describe the policies and practices of Anadarko and its predecessor(s) over time in Colorado, Wyoming and Utah as to how the 2-1/2% royalty under the Surface Owner's Agreements is paid or allocated, where the SOA covers less than the entire spacing unit and to whom it is paid.**
>
> RESPONSE:  Defendants object to this Interrogatory on the grounds that allocation of production or payment of money due under SOAs in Colorado, Wyoming and Utah is not relevant or reasonably calculated to lead to the discovery of admissible evidence in this case because (1) members of the certified class in this case, by definition, have no SOAs on the lands at issue, and (2) members of the certified class, again by definition, are surface owners in the Wattenberg Field in Colorado, not surface owners in other areas of Colorado or in Wyoming or Utah.  Defendants also object to this Interrogatory on the grounds that the SOAs do not provide for payment of a "royalty," a term that has a specific legal meaning in the oil and gas context.
>
> **Interrogatory No. 4.  Describe Anadarko's policy or practice with regard to the payment of a portion of the 2-1/2% royalty to surface owners in the Wattenberg Field whose land is not covered by**

**an SOA, but whose land is included in a spacing unit that includes surface land covered by an Active SOA on which a well is drilled, and describe such policy or practice and the reasons for such policy and practice.**

RESPONSE:  Defendants object to this Interrogatory on the grounds that allocation of production or payment of money due under SOAs in the Wattenberg Field is not relevant or reasonably calculated to lead to the discovery of admissible evidence in this case because members of the certified class in this case, by definition, have no SOAs on the lands at issue.  Defendants also object to this Interrogatory on the grounds that the SOAs do not provide for payment of a "royalty," a term that has a specific legal meaning in the oil and gas context.

**Interrogatory No. 5.  In regard to interrogatory 4, if Anadarko's policy or practice is different in areas of Colorado outside the Wattenberg Field or in Wyoming or Utah, please explain the reasons for maintaining the different policy or practice in the separate geographic areas.**

RESPONSE:  Defendants incorporate by reference their objections to Interrogatory No. 4.  Defendants further object to this Interrogatory on the grounds that allocation of production or payment of money due under SOAs in areas of Colorado other than the Wattenberg Field, Wyoming, and Utah is not relevant or reasonably calculated to lead to the discovery of admissible evidence in this case because members of the certified class in this case, by definition, are surface owners in the Wattenberg Field in Colorado, not surface owners in other areas of Colorado or in Wyoming or Utah.

**Interrogatory No. 6.  Describe Anadarko's policy with regard to payment of a portion of the 2-1/2% royalty to Surface Owners in the Wattenberg Field whose lands are covered by Active SOA's upon which no well is drilled, but where such SOA lands are included in a spacing unit in which a well is drilled.**

RESPONSE:  Defendants object to this Interrogatory on the grounds that allocation of production or payment of money due under SOAs in Colorado, Wyoming and Utah is not relevant or reasonably calculated to lead to the discovery of admissible evidence in this case because members of the certified class in this case, by definition, have no SOAs on the lands at issue.  Defendants also object to this Interrogatory on the grounds that the SOAs do not provide for payment of a "royalty," a term that has a specific legal meaning in the oil and gas context.

**Interrogatory No. 7.  In regard to interrogatory 6, if Anadarko's policy or practice is different in areas of Colorado outside the Wattenberg Field or in Wyoming or Utah, please explain the reasons for maintaining the different policy or practice in the separate geographic areas.**

RESPONSE:  Defendants incorporate by reference their objections to Interrogatory No. 6.  Defendants further object to this Interrogatory on the grounds that allocation of production or payment of money due under SOAs in areas of Colorado other than the Wattenberg Field, Wyoming, and Utah is not relevant or reasonably calculated to lead to the discovery of admissible evidence in this case because members of the certified class in this case, by definition, are surface owners in the Wattenberg Field in Colorado, not surface owners in other areas of Colorado or in Wyoming or Utah.

. . .

**Interrogatory No. 12.  Identify and describe the policies and/or practices of Anadarko and Kerr-McGee in the Wattenberg Field regarding payments made or to be made to surface landowners for horizontal wellheads located on their land.**

RESPONSE:  . . . Defendants also object to this Interrogatory on the ground that a policy or practice, if any existed, concerning payment for horizontal wellheads is not relevant or reasonably calculated to lead to the discovery of admissible evidence in this case.  Plaintiffs' allegations in this case are that Defendants have exceeded the permissible scope of surface use reserved in the Union Pacific deeds and therefore trespassed when their lessees drilled "unnecessary" vertical wells (i.e., more than on vertical well per quarter section) on Plaintiffs' and the class members' surface. There are no allegations in this case concerning any trespass based on horizontal wellheads.  Without waiving and subject to these objections, Defendants state that they do not drill wells on their oil and gas estate in Wattenberg Field and, accordingly, they have no such policies or practices.

. . .

**Interrogatory No. 16.  In connection with Anadarko's decision to discontinue or to continue offering SOA's to the surface landowners and paying the 2-1/2% royalty to the surface owners under whose lands Anadarko's minerals are located, please state what geographic regions of Colorado (other than the Wattenberg Field), Wyoming and Utah were covered by such decision, and when the decision to discontinue or continue was made.**

RESPONSE:  Defendants object to this Interrogatory on the grounds that their decision to discontinue or continue offering SOAs to surface landowners or paying surface landowners under the terms of SOAs in areas of Colorado other than the Wattenberg Field, Wyoming or Utah are not relevant or reasonably calculated to lead to the discovery of admissible evidence in this case because (1) members of the certified class in this case, by definition, have no SOAs on the lands at issue, and (2) members of the certified class, again by definition, are surface owners in the Wattenberg Field in Colorado, not surface owners in other areas of Colorado or in Wyoming or Utah.  Defendants also object to this Interrogatory on the grounds that the SOAs do not provide for payment of a "royalty," a term that has a specific legal meaning in the oil and gas context..

**Interrogatory No. 17.  If Anadarko and its lessees' practice of offering SOA's and 2-1/2% royalty was discontinued and then reinstated in some geographic regions of Colorado, Wyoming or Utah, please describe the period of discontinuation, the reasons for discontinuation, and the reasons for reinstatement, and identify persons, entities or governmental agencies with whom Anadarko was in communication regarding such decision, and persons within Anadarko who were involved in reinstating the practice.**

RESPONSE:  Defendants object to this Interrogatory on the grounds that their decision to discontinue or continue offering SOAs to surface landowners or paying surface landowners under the terms of SOAs in Colorado, Wyoming or Utah are not relevant or reasonably calculated to lead to the discovery of admissible evidence in this case because (1) members of the certified class in this case, by definition, have no SOAs on the lands at issue, and (2) members of the certified class, again by definition, are surface owners in the Wattenberg Field in Colorado, not surface owners in other areas of Colorado or in Wyoming or Utah.  Defendants also object to this Interrogatory on the grounds that the SOAs do not provide for payment of a "royalty," a term that has a specific legal meaning in the oil and gas context.

. . .

**Request for Production No. 1.  Produce all documents of Anadarko and its predecessor(s) that describe how the 2-1/2% royalty under the SOA's is or was to be paid or allocated on lands in Colorado, Wyoming, and Utah where the SOA covers less than the entire spacing unit.**

RESPONSE:  Defendants object to this Request on the grounds that documents describing allocation of production or payment of money

due under SOAs are not relevant or reasonably calculated to lead to the discovery of admissible evidence in this case because (1) members of the certified class in this case, by definition, have no SOAs on the lands at issue, and (2) members of the certified class, again by definition, are surface owners in the Wattenberg Field in Colorado, not surface owners in other areas of Colorado or in Wyoming or Utah.  Defendants also object to this Interrogatory on the grounds that the SOAs do not provide for payment of a "royalty," a term that has a specific legal meaning in the oil and gas context.

(Docket No. 230-6, pp. 6-8, 12-13, 15-16; Docket No. 230-7, p.4.)  Defendants later

supplemented their responses to other discovery requests, but not to any of the

requests at issue here.  (Docket No. 236-1.)  In briefing the motion before the Court,

Defendants make no argument about "royalty" being a legal term of art.  (*See* Docket

No. 236.)  The Court therefore deems the term-of-art objection to be waived.

The parties agree, as they must, on the governing legal standards set forth in the

Federal Rules of Civil Procedure:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).

In order to maintain their relevance objections, Defendants define the claims and

defenses of the parties strictly, as a simple trespass case.  In Defendants' view, the only

relevant issues are the scope of Defendants' right to use the surface estates, the actual

use of those surface estates, and what damages arose if the latter exceeded the former.

Under that view of the case, nothing that happened on other parcels of land can have

any relevance.  But this case is not that simple.  To begin with, the case turns on

7

Defendants' vicarious liability for the acts of its lessees—an inquiry that necessarily involves Defendants' knowledge and intent with regard to the alleged trespass.  *See A-W Land Co., LLC v. Anadarko E&P Co. LP*, 2011 WL 2970966, at *3-5 (D. Colo. July 21, 2011) (then-District Judge Krieger, granting leave to amend complaint and reopen case).  Further, Plaintiffs seek equitable remedies that might be measured by Defendants' gains rather than Plaintiffs' losses, depending on Defendants' willfulness.  *See A-W Land Co. LLC v. Anadarko E & P Onshore LLC*, 2014 WL 7051161, at *3 (D. Colo. Dec. 12, 2014) (Magistrate Judge Watanabe, granting leave to file second amended class action complaint).  The reasons behind Defendants' decision to offer, or not to offer, payment in exchange for allegedly excess surface use in different geographic areas and factual situations may well shine light on both of those questions.  Plaintiffs' discovery requests are therefore reasonably calculated to lead to admissible evidence.

In fact, Defendants effectively concede this point.  Throughout their opposition to the motion to compel, Defendants argue that the facts disprove Plaintiffs' assertions.  For example, as to Interrogatories 4 and 6, Plaintiffs suggest that Defendants' payment practices for different landowners within a spacing unit—some with physical wellheads, some without—may show whether the payments are intended to compensate for surface use.  (Docket No. 230, p.9.)  In rebuttal, after making their other relevance arguments, Defendants argue that the payments are made to anyone within a spacing unit regardless of the presence of a well—thereby disproving Plaintiffs' theory that the practice shows payment for well placement.  (Docket No. 236, pp. 10-11.)  But of course, if the payment practices weren't *relevant*, they couldn't disprove Plaintiffs'

theory.  By repeatedly arguing that the facts disprove Plaintiffs' case, Defendants

necessarily concede relevance.

Finally, Defendants pose one objection unique to Interrogatory 12.  Defendants

argue that they provided a substantive answer and need not provide any further answer.

But the Court does not find their "substantive" answer to be sufficient.  The interrogatory

asked them to explain their policies or practices for payments to be made to surface

estate owners for horizontal wellheads.  Defendants answered by stating that they do

not drill wellheads and therefore have no applicable policies or practices.  Defendants'

answer is incomplete, because the interrogatory did not ask about Defendants'

practices as to horizontal wellheads *drilled by Defendants*.  The interrogatory asked for

practices or policies as to horizontal wellheads regardless of who drills them.  Plaintiffs

are entitled to an answer to the question they asked—which includes horizontal

wellheads drilled by Defendants' lessees or other agents.

For the foregoing reasons, the Court grants Plaintiffs' motion to compel complete

responses to interrogatories 3, 4, 5, 6, 7, 12, 16, and 17, plus document request 1, from

Plaintiffs' August 9, 2014, discovery requests.

## II.    <u>Custody-and-Control Objections</u>

Defendants further object to the entire set of discovery requests to the extent

they ask Defendants to respond on behalf of Kerr-McGee, a sister company affiliated

with Defendants but not under their direct legal control.  Plaintiffs note that the sister

companies share various officers and directors, and have often exchanged documents

and information in transactions with each other; moreover, Defendants have produced

various documents from Kerr-McGee on a sporadic basis throughout this and related

litigation.

In similar circumstances, this Court set forth the applicable standard:

> For purposes of Fed. R. Civ. P. 34, documents are deemed to be in a party's possession, custody or control if that party has actual possession, custody or control of the materials "or has the legal right to obtain the documents on demand." *Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 110 (D. Colo.1992) . . . . Some courts have construed "control" more broadly to include the "practical ability to obtain the materials sought upon demand." *See, e.g.*, *Securities and Exchange Commission v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 471 (S.D. N.Y. 2000) . . . . However, even under the most expansive interpretation of "control," the "practical ability" to demand production must be accompanied by a similar ability to enforce compliance with that demand.

*Klesch & Co. v. Liberty Media Corp.*, 217 F.R.D. 517, 520 (D. Colo. 2003).

Nothing Plaintiffs have shown meets this standard of an *enforceable* practical

ability. Plaintiffs cite to *Tomlinson v. El Paso Corp.*, 245 F.R.D. 474 (D. Colo. 2007), as

an example of a third party's records being under the custody or control of a party

opponent. But that case involved data stored by a third-party pension administrator—in

other words, records stored by an agent within the scope of the agency relationship.

Here, there is no showing that Kerr-McGee is an agent of Defendants'. Plaintiffs have

already served a third-party subpoena on Kerr-McGee and will need to enforce that

subpoena under Rule 45 if they are unsatisfied with the response.

The Court therefore denies Plaintiffs' motion to the extent it seeks to compel

Defendants to produce documents and interrogatory responses on behalf of Kerr-

McGee.

## Plaintiffs' Second Motion to Compel Discovery

Plaintiffs' second motion to compel (Docket No. 255) concerns their February 5,

2015, discovery requests, consisting of two requests for production of documents.

Those requests, and Defendants' responses, are:

**Request No. 1.  Produce all Warranty Deeds entered into by Anadarko's Predecessor in Wyoming and Utah.**

RESPONSE:  Defendants object to this Request on the grounds that warranty deeds entered into by Union Pacific Railroad Company or its affiliates in Wyoming and Utah are not relevant or reasonably calculated to lead to the discovery of admissible evidence because (1) members of the certified class in this case, by definition, are surface owners in the Wattenberg Field in Colorado, not surface owners in Wyoming or Utah, and (2) the Request seeks warranty deeds without regard to whether they concern severance of the mineral and surface estates or whether they reflect a completely different type of conveyance.

Defendants also object to this Request because it is overly burdensome and oppressive, particularly given the lack of relevance of the information to this case.  Defendants own more than five million gross mineral acres in Utah and Wyoming.  The effort to locate and produce deeds severing the mineral estate and the surface estate will require a substantial commitment of time and resources.

**Request No. 2.  Produce all SOAs entered into in Wyoming and Utah.**

RESPONSE:  Defendants object to this Request on the grounds that Surface Owner's Agreements in Wyoming and Utah are not relevant or reasonably calculated to lead to the discovery of admissible evidence in this case because (1) members of the certified class in this case, by definition, have no SOAs on the lands at issue, and (2) members of the certified class, again by definition, are surface owners in the Wattenberg Field in Colorado, not surface owners in Wyoming or Utah.

In addition, as explained by deposition testimony and documents previously produced in this and related cases, starting in the late 1990s surface owners in the Wattenberg Field have become increasingly dissimilar from surface owners in Wyoming and Utah.  As a result, the context in which SOAs historically have been offered no longer exists in the Wattenberg Field, and many of the reasons for offering SOAs no longer apply in the Wattenberg Field.  Generally, in the late 1800s and

early 1900s, Defendants' predecessors severed and conveyed  Generally, in the late 1800s and early 1900s, Defendants' predecessors severed and conveyed the surface of entire sections of land to third parties.  These large parcels of property were principally used by the purchasers for agricultural purposes.  As Front Range communities have expanded, the formerly large agricultural parcels in the Wattenberg Field are regularly being subdivided into small residential or commercial use parcels.  Instead of a single surface owner of a section of land over Defendants' minerals, there are many different owners of the small subdivided parcels, as evidenced by the number of potential class members.  The existence of a large number of individuals owning lots in a single section of land decreases the likelihood that Defendants would be able to obtain an overall uniform commitment for that entire section of land and multiplies Defendants' administrative burdens to track individual owners and implement individual agreements.  The burdens therefore outweigh the possible benefit.  Moreover, the Wattenberg Field surface owners who have SOAs routinely object to, and have even sued Defendants and their lessees to block, surface use for oil and gas development, notwithstanding their commitments to the contrary in the SOAs.  As a result, Defendants do not receive a benefit from SOAs in the Wattenberg Field.

In contrast, the surface parcels over Defendants' minerals in Wyoming and Utah are still mostly large agricultural parcels held by a limited group of surface owners, and those surface owners work with Defendants and their lessees to facilitate oil and gas development.  Defendants still receive benefit from SOAs in Wyoming and Utah.

In light of the lack of relevance of the Wyoming and Utah SOAs to this case, Defendants also object to this Request as unduly burdensome and oppressive.  As noted above, Defendants own more than five million gross mineral acres in Utah and Wyoming.  The effort to locate and produce all of the SOAs covering that acreage will require a substantial commitment of time and resources.

(Docket No. 255-2.)  In briefing the motion before the Court, Defendants make no

argument about the requests being overbroad, unduly burdensome, or oppressive.

(*See* Docket No. 265.)  The Court therefore deems the unduly-burdensome objection to

be waived.

Defendants' remaining argument is a relevancy argument—asserting that the

circumstances surrounding its Utah and Wyoming transactions are too dissimilar to

those surrounding its Wattenberg Field transactions to have any relevance.  But the dissimilarities noted by Defendants, even if true, do nothing to undermine Plaintiffs' theory of relevance.  Plaintiffs allege that, historically, Defendants and their predecessors paid 2.5% of royalties from a well, in exchange for license to exceed their legal rights on the surface estate; when Defendants stopped offering the payments but (allegedly) continued exceeding their legal rights, they trespassed.  Thus, Plaintiffs seek documents they hope will connect the payments to the surface use.  Defendants argue, here, that such transactions were no longer practicable in the Wattenberg Field but remain practicable elsewhere.  But this "practicability" argument does nothing to undermine Plaintiffs' theory of the transaction.  The added administrative cost of dealing with a large number of small landowners would justify stopping payments *whether or not* the payments were made in exchange for additional surface rights.  The dissimilarities Defendants rely on might explain their conduct and might undermine Plaintiffs' efforts to show knowledge or intent as to the alleged trespass—but they do not establish that the documents Plaintiffs requested are irrelevant.

For the foregoing reasons, the Court grants Plaintiffs' motion to compel complete responses to their February 5, 2015, discovery requests.

### **Order**

For the foregoing reasons, it is hereby ORDERED that:

- Plaintiffs' Motion to Compel Discovery (Docket No. 229) is GRANTED IN PART and DENIED IN PART;

- Plaintiffs' Second Motion to Compel Discovery (Docket No. 255) is GRANTED;

- No later than June 5, 2015, Defendants shall provide complete responses to Interrogatories 3, 4, 5, 6, 7, 12, 16, and 17, plus Document Request 1, from Plaintiffs' August 9, 2014, discovery requests, and also complete responses to Document Request 1 and 2 from Plaintiffs' February 5, 2015, discovery requests—except that Defendants need not provide responses on behalf of Kerr-McGee; and

- Each party shall pay its own fees and costs with regard to these motions, as the Court finds that an award of fees or costs would be unjust under the circumstances.

Dated:      May 11, 2015                        */s/ Michael J. Watanabe*
            Denver, Colorado                    Michael J. Watanabe
                                                United States Magistrate Judge