IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 09-cv-02293-MSK-MJW

MARVIN BAY and MILDRED BAY, Co-Trustees of the Bay Family Trust,

 Plaintiffs,

v.

ANADARKO E&P COMPANY LP; and
ANADARKO LAND CORPORATION,

 Defendants.

## OPINION AND ORDER DISMISSING CLAIMS

**THIS MATTER** comes before the Court *sua sponte*.

The Court assumes the reader's familiar with the lengthy and extensive proceedings to date in this action. In abbreviated summary, a group of landowners that included Plaintiffs Marvin and Mildred Bay ("the Bays") commenced this action alleging a claim of trespass against the Defendants (collectively, "Anadarko") under Colorado law. Anadarko holds the rights to the mineral estate beneath the various landowners' surface estates, but the landowners contended that Anadarko's[1] oil and gas development activities exceeded the scope of Anadarko's rights to occupy the surface estate.[2]

---

[1]  For purposes of efficiency, the Court will not distinguish between acts by Anadarko itself and acts by entities to whom Anadarko leased its mineral interests and who actually constructed the wells and other development on the landowners' property. The Court will simply refer to all such actions as having been performed by Anadarko itself.

[2]  The landowners essentially contended that Anadarko should have arranged to drill multiple directional wells from a single well pad, rather than drilling numerous vertical wells from separate well pads.

1

This Court certified a class action for the purpose of construing the meaning of certain language in the landowners' deeds, all of which severed the mineral estate and reserved certain rights in the surface estate to the mineral estate owner. Lengthy proceedings in this Court occurred thereafter. Once the deeds' meaning was resolved, the Court de-certified the class, finding that each landowners' trespass claim turned on different factual issues. The parties agreed to select a bellwether plaintiff to proceed to trial, and the landowners selected the Bays. The Court commenced a jury trial on the Bays' trespass claim, but at the conclusion of the Bays' presentation of evidence, the Court found that the Bays' evidence failed, as a matter of law, to demonstrate that Anadarko's activities amounted to a trespass. Thus, the Court entered judgment in favor of Anadarko pursuant to Fed. R. Civ. P. 50.

The Bays appealed, and the 10th Circuit reversed. *Bay v. Anadarko E&P Onshore, LLC* 912 F.3d 1249 (10th Cir. 2018) ("*Bay*"). The 10th Circuit's analysis in *Bay* is critical to the outcome of this Order, and thus, this Court discusses it at some length. The 10th Circuit began by finding that "*Gerrity* [*Oil & Gas Corp. v. Magness*, 946 P.2d 913 (Colo. 1997)] is the leading Colorado case addressing surface use rights held by mineral owners and the elements of trespass." 912 F.3d at 1255. After reciting the facts of *Gerrity*, the 10th Circuit summarized *Gerrity*'s key holding: that "a mineral owner may access and use that portion of the surface estate that is reasonably necessary to develop the severed mineral interest," and that "the surface owner and mineral owner must have due regard for the rights of the other in making use of the estate in question." 912 F.3d at 1256. The 10th Circuit noted that *Gerrity* had also cited to *Getty Oil Co. v. Jones*, 470 S.W.2d 618 (Tx. 1971), "for the proposition that the 'due regard' concept requires mineral owners to accommodate surface owners to the extent possible." *Id.*

2

Noting that *Getty* "concerned a dispute that resembles the one between the Bays and Anadarko" and that the Colorado Supreme Court "appears to have relied upon [*Getty*]," the 10th Circuit then considered *Getty*'s facts. There, Jones, the surface owner, sued to enjoin Getty, the mineral estate owner, from constructing pumping units that were tall enough to obstruct the irrigation system that Jones used for farming the surface estate. The Texas Supreme Court found that Jones had adduced evidence that the irrigation method he used was the only feasible way to farm the land, and that Getty had the ability (but refused) to construct shorter pumping units that would allow Jones' irrigation system to pass over them. Based on these facts, the Texas court found that Jones' case should proceed to trial, as he had demonstrated that "(1) he would have to abandon his existing surface use" if Getty's chosen pumping units remained, and "(2) Getty's use of the surface was not reasonably necessary because other reasonable means of producing the minerals were available." 912 F.3d at 1256-57.

Returning to *Gerrity*'s application of *Getty*, the 10th Circuit explained that *Gerrity* "prescribed a three-step burden-shifting approach" for trespass claims. First, "the surface owner must make a prima facie case by introducing evidence that 'the operator's conduct materially interfered with surface uses," and the 10th Circuit noted that "[t]he interference must be more than 'inconvenient to the surface owner," and "must be unreasonable from the perspective of the surface owner, considering only the effects on surface use." Second, the mineral owner was required to show "why its surface conduct was reasonable and necessary from its perspective by showing, for instance, that its operations conformed to standard customs and practices in the industry." Finally, the surface owner could prove "that reasonable alternatives were available to the operator at the time of the alleged trespass." 912 F.3d at 1257.

Next, the 10th Circuit discussed, at length, the particular language of the reservation of rights in the Bays' deed. The court ultimately concluded that it did "not bestow the mineral owner with any rights beyond those already provided at common law" – that is, that the *Gerrity* analysis, not any unique standard created by the deed itself, controls in this case. 912 F.3d at 1261.

Because the ordinary *Gerrity* analysis applied to the Bays' claims, the 10th Circuit found that this Court – which had concluded that a "modified" version of *Gerrity* applied by virtue of the deed language – had erred. To determine whether that error was prejudicial, the 10th Circuit then proceeded to analyze whether the Bays' evidence would support a claim under the normal *Gerrity* standard. Thus, it turned to the first element, the Bays' *prima facie* case – that is, whether Anadarko's surface use had constituted a "material" interference with the surface use.

The 10th Circuit noted that *Gerrity* "offers little explicit instruction on what constitutes material interference," but noted that *Getty,* on which *Gerrity* had relied, "suggests that surface use must be infeasible or nearly impossible under the circumstances" in order for the interference to be "material." 912 F.3d at 1261. The 10th Circuit also found that "[a] more recent Texas case," *Merriman v. XTO Energy, Inc.*, 407 S.2d 3d 244, 249 (Tx. 2013), "also provides helpful guidance on the meaning of material interference." 912 F.3d at 1261-62. Explaining that "[m]aterial interference is a high bar," the 10th Circuit quoted *Merriman* for the proposition that "the surface owner has the burden to prove that the lessee's use <u>completely precludes</u> or <u>substantially impairs</u> the existing use." 912 F.3d at 1262 (emphasis in original). Thus, the 10th Circuit seemed to endorse a conclusion that, to establish its *prima facie* case, the surface owner must show that it "has no reasonable alternative method to maintain the existing use" in light of the mineral owner's activities. *Id.* The 10th Circuit concluded its analysis on this element by

4

observing that based on "factual differences between the Bays' claims, *Gerrity*, and the aforementioned Texas authorities, we question whether the record before us supports a legally sufficient finding of material interference." *Id.* (emphasis added). But the 10th Circuit chose not to resolve this issue "because Anadarko has not raised it on appeal."

The 10th Circuit then briefly considered the remaining two elements, finding that Anadarko had met its burden of producing evidence that its surface use was reasonably necessary and that the Bays had come forward with sufficient evidence of the availability of alternatives to allow the issue to proceed to the trier of fact. Thus, the Court of Appeals reversed this Court's grant of judgment as a matter of law to Anadarko. 912 F.3d at 1262-63. The court remanded this action "for further proceedings consistent with this opinion."

Mindful of the 10th Circuit's doubt as to whether the Bays' evidence was sufficient to establish their burden of demonstrating Anadarko's "material interference" with the Bays' use of the surface estate, this Court issued an Opinion and Order Directing Briefing **(# 453)**. That Order recited the preceding analysis and noted that "the 10th Circuit's observation presents a potential question of legal sufficiency, similar to a mid-trial motion for judgment as a matter of law . . . that would, if resolved in favor of [Anadarko], ameliorate the need for a re-trial." The Court recited the facts that the Bays had adduced at trial regarding the nature of Anadarko's interference with their agricultural operations,³ and observed that "[n]one of the impacts Mr. Bay

---

³  That recitation is deemed incorporated herein. Summarized, Mr. Bay's testimony was that: (i) multiple well sites caused additional inconvenience when operating farm equipment and created areas for weed growth; (ii) compaction of soil along fence lines and tracks where Anadarko's vehicles were operated; (iii) failure to remediate a pit which caused an irrigation sprinkler to sink into the pit, requiring Mr. Bay to retrieve the sprinkler with a tractor; (iv) soft soil conditions over flow lines, which could only be somewhat remediated; (v) Anadarko's inadequate spraying for weeds around well locations; (vi) erosion of the hillside due to water collecting in trenches cut by Anadarko for flow lines; (vii) water waste resulting from irrigation devices "get[ting] in the wrong rows"; (viii) crop loss due to vehicle access roads; (ix) light and

described at trial would seem to suffice to constitute a material interference" with their use of the surface estate under the standard articulated by the 10th Circuit. Thus, this Court directed that the Bays "file a brief addressing the evidence in the trial record and whatever legal authority they with to rely upon to demonstrate their ability to establish the material interference element."

The Bays' brief in response **(# 454)** raised numerous legal and factual arguments. First, the Bays argued that "neither [*Getty* or *Merriman*] has any bearing on a Colorado surface owner's prima facie case under *Gerrity*," and that "commentators have recognized that Colorado and Texas apply the reasonable accommodations doctrine differently." The Bays argue that Texas law treats the mineral owner as "the dominant estate," whereas *Gerrity* indicates that Colorado law treat the two estates equally and, moreover, requires the element of material interference to be adjudged from the perspective of the surface owner. The Bays contend that, measured against a standard derived from the surface owner's expectations, the evidence they adduced at trial could suffice to meet the *Gerrity* standard.

Second, the Bays argued that "if the material interference standard changed" from the standard announced by this Court prior to the first trial, they "must be granted the opportunity to conduct relevant discovery and legal research and present the applicable evidence to a jury." They assert that, at that trial, Mr. Bay "did not, but could have, explained exactly how much crops loss has been caused by Anadarko's surface use annually to show the hundreds of thousands of dollars Anadarko's excessive surface use has cost him and his family" and that he "can present further testimony regarding the extent of compaction and its residual effects, the severity of weeds, and the mud pit and flow line effects" that he discussed at the first trial.

---

noise pollution and vehicle exhaust resulting from; find (x) general concerns about the possibility that Anadarko might be using radioactive materials or asbestos in its activites.

Third, the Bays argue that, even under the *Getty/Merriman* "material interference" standard, they can adduce evidence that would satisfy that standard. They do not particularly explain what that evidence would be, other than to state that the evidence would relate to "decrease in production potential and land value."

Finally, the Bays argue that this Court should instead stay this case and certify the question of the appropriate interpretation of the "material interference" standard to the Colorado Supreme Court under Colo. App. R. 21.1(a), or to await further development of the law by state courts hearing some sixty similar cases.

Once again, this Court construes the instant matter similar to a Motion for Judgement As a Matter of Law under Fed. R. Civ. P. 50, based on the evidence that the Bays offered at the first trial.[4] Such judgment is appropriate "only if the evidence points by one way and is susceptible to no reasonable inferences which may support the nonmoving party's position. *In re Cox Enterprises, Inc.*, 871 F.3d 1093, 1096 (10th Cir. 2017). The Court construes the evidence in the light most favorable to the Bays and does not make credibility determinations or otherwise weigh the evidence. *Liberty Mut. Fire Ins. Co. v. Woolman*, 913 F.3d 977, 983 (10th Cir. 2019). The sole question is whether the Bays' evidence, taken in the light most favorable to them, could be sufficient to meet the "material impairment" standard.

The Court begins with the Bays' first argument: that Texas cases like *Getty* and *Merriman* should not be used to interpret or refine the *Gerrity* standard. This Court is, simply, unable to entertain that argument. The Court is bound by the 10th Circuit's interpretation of

---

[4] The Court addresses the Bays' argument that additional evidence exists below.

Colorado law.[5]  Were the Court to hold a second trial, it would deem the 10th Circuit's interpretation of the "material interference" standard to be controlling and would instruct the jury accordingly.  Thus, there is little reason why the Court should not apply that same standard when considering the matter under Rule 50.  Accordingly, it is appropriate to apply the standard to the evidence in the record herein.

The Court skips over the Bays' second argument for a moment and proceeds to their third argument: that their evidence at trial could suffice to satisfy the "material interference" standard articulated in *Bay*.  The Bays do not materially develop this argument, at least not based on the evidence that was already adduced at trial.  Rather, they argue that "additional evidence the Bays may provide" would be "highly likely" to meet the 10th Circuit's standard.  One can reasonably infer from this argument that the Bays are conceding that the evidence that was actually adduced at trial <u>does not</u> suffice to meet the "material interference" standard as set forth in *Bay*.

That standard requires that the Bays' use of the surface land for agricultural purposes be either "completely preclud[ed]" or "substantially impair[ed]," with the latter test met by showing that, due to Anadarko's actions, the Bays have "no reasonable alternative method to maintain the existing use."  Clearly, the Bays cannot meet that standard.  The wells they challenge on the South Farm were constructed in 2006, two of the four wells on the North Farm were constructed in 2007, and the final two were constructed in 2011.  But the Bays testified that the remaining surface land was still being used for agricultural purposes as of trial in 2017, and they have given no indication that the situation has changed to date.  Although Mr. Bay testified that Anadarko's

---

[5]     The Bays argue that the 10th Circuit's discussion of the *Getty* and *Merriman* standards is "dicta."  Even if it is – and this Court makes no such finding – it is clear that the 10th Circuit fully intended it to clarify the meaning of the "material interference" standard and expected this Court to apply that standard when conducting any retrial.

wells caused various inconveniences to his efforts to farm in areas adjacent to Anadarko's wells -- that Anadarko's activities caused soil compaction and weed growth in those areas and caused difficulties with farm and irrigation equipment in locations where Anadarko's construction was or is present -- it is clear, even from *Gerrity* itself that "[e]vidence that the operator's conduct was merely inconvenient to the surface owner is insufficient." Thus, on the trial record, the Court would be required to grant judgment as a matter of law to Anadarko based on the Bays' failure to establish the "material interference" element.

Because it is clear that the Bays cannot succeed on the "material interference" prong on the existing trial record, there remains a question as to whether they have articulated the ability to put on evidence that, if presented in a new trial, would suffice. The Bays argue that they should be permitted to come forward with new evidence because the Court announced that it construed *Gerrity*'s first element to require the Bays to establish only that Anadarko's "use of the surface was unreasonable according to [the Bays'] subjective expectations." The Court agrees that the standard it intended to apply at the first trial is substantially less exacting than the "material interference" standard that the 10th Circuit identified. (One could say that the 10th Circuit implicitly reversed this Court with regard to that standard as well.) Thus, the Bays' argument that they should be permitted to come forward with new evidence is well-taken.

But the Bays' briefing does not identify any particular new evidence that they would come forward with that would suffice to meet the new, more restrictive "material interference" standard. The Bays' brief makes only generalized references to evidence that they currently possess, primarily a reference to Mr. Bay being prepared to testify as to "crop loss [ ] caused by Anadarko's surface use" that has resulted in "hundreds of thousands of dollars [it] has cost

9

him."[6]  In other respects, the Bays appear to imply that they presently lack sufficient evidence, as they argue that they should be "granted an opportunity to conduct relevant discovery" in order to meet the new "material interference" standard.

The Court reflexively rejects the Bays' argument that the 10th Circuit's decision warrants reopening discovery.  Nothing in the record suggests that the Bays' discovery requests were in any way constrained by this Court's rulings about the legal standard that applied to their *prima facie* case,[7] and the Bays have not identified, even generally, the additional information they would seek to discover.

At most then, the Court is left with the Bays' contention that in a new trial, Mr. Bay would supplement his existing testimony with testimony about how Anadarko's construction of the wells caused the Bays to suffer "hundreds of thousands of dollars" of crop losses.  But Mr. Bay already testified about crop losses at the first trial.  Specifically, he testified that Colorado Oil and Gas Commission rules require oil and gas developers to pay for crop losses, that he made demands on Anadarko in 2013 for reimbursement of crop losses to date, and that the Bays "did reach an agreement" for Anadarko to compensate them for such losses in the amount of $20,000.  (Mr. Bay testified that he made additional demands on Anadarko in 2014 for continuing losses,

---

[6]     The Bays also refer to having "further testimony regarding" the issues Mr. Bay already addressed, such as soil compaction and weed growth in areas adjacent to Anadarko development locations.  In this regard, the 10th Circuit's contrast with *Getty* is apt: a showing that Anadarko's actions prevented the Bays from operating irrigation equipment for their entire farm might suffice, but adverse effects localized to the immediate vicinity of locations where Anadarko's development activities were occurring are, as noted above, mere "inconveniences" that fail to meet the *Gerrity* standard.

[7]     Moreover, the Court is puzzled as to why the Bays would need to conduct any additional discovery about the interference that Anadarko's construction had with their use of the surface estate, given that the knowledge of such interference is clearly within the personal knowledge of the Bays themselves.

but received no response.)   It is not clear from the briefing what additional evidence Mr. Bay would could present as to "hundreds of thousands of dollars" of crop losses arising in 2014 and beyond, but it is clear that such losses would result from Anadarko infrastructure that has been in place since 2011.  In other words, the losses the Bays wish the supplement the record to include relate to crops that they have been unable to grow on those portions of land that Anadarko has been using since 2013.  In that sense, the value of the lost crops is simply a proxy for the amount of surface land being used by Anadarko.  And the Bays have not argued that the amount of land used by Anadarko, as a percentage of the entire area of the Bays' land used for agricultural production, is so significant as to itself amount to "material interference" – that is, complete preclusion of agricultural use of the surface estate or such substantial interference that productive use of the surface estate is effectively impossible.  Admittedly, land used by Anadarko cannot be used by the Bays.  But, at the same time, Anadarko's ownership of the mineral estate entitles it to occupy reasonable portions of the surface estate, an occupation that, by definition, will result in some losses to the Bays.

Thus, the Court finds that the existing trial record does not demonstrate that Anadarko's use of the a portion of the land materially interfered with the Bays' ability to use the remainder of the surface estate.  Nor have the Bays articulated any additional evidence that they could produce that, when added to the existing record, would allow them to meet that standard.  As a result, the Court concludes that Anadarko is entitled to judgment as a matter of law on the trespass claim.

The Court pauses here to address the Bays' final argument: that the Court should stay this litigation and either certify a question to the Colorado Supreme Court or simply await the development of law on the "material interference" standard as similar cases in state court

proceed.[8]  The indefinite duration of the latter option, plus the advanced age of this case, makes that option inappropriate.  And, for essentially the reasons discussed above, this Court declines the suggestion that it certify a question to the Colorado Supreme Court.  Although the Colorado Supreme Court is the final authority on questions of state law, this Court must also take its instructions on legal issues from the 10th Circuit.  The 10th Circuit has instructed this Court as to how the "material interference" standard should be construed, and this Court is not free to second guess those instructions by asking a different court to intercede.  To the extent the Bays believe that certification of a question to the Colorado Supreme Court is warranted, they may appeal this ruling and request that the 10th Circuit grant that relief.

Having concluded that Anadarko is entitled to judgment as a matter of law on the Bays' claims, the question remains as to how the remainder of this case should be addressed.  As noted above, the Bays' claims were proffered as a bellwether of the claims that several other plaintiffs (and former class members) wish to pursue individually.  A fair assumption might be that, as bellwether plaintiffs, if the Bays cannot adduce sufficient evidence to satisfy the "material interference" standard, none of the remaining landowners can do so either.  But the Court will not presume to enter judgment on behalf of Anadarko against all of the landowner plaintiffs at this time.  Previously, the Court entered final judgment on the Bays' claims, allowing the Bays to take an immediate appeal.  Because the Bays disagree with this Court that *Bay* correctly sets forth the "material interference" standard, this Court presumes that the Bays will want to appeal this matter again in the hopes of convincing the 10th Circuit to reconsider and adopt a more

---

[8]  The Bays argued that cases raising similar claims were underway in state court.  To date, no party has filed any Notice of Supplemental Authority indicating any state court decision addressing the "material interference" standard in this context, and the Court's research reveals none.  To date, the 10th Circuit's decision in *Bay* stands as the only modern interpretation of the *Gerrity* decision.

favorable standard. For the same reasons, the Court further assumes that none of the other landowner plaintiffs will request to proceed until the Bays' appeal is complete. Thus, the Court will, once again, enter final judgment in favor of Anadarko against the Bays and close this case, leaving the claims of any other landowner plaintiffs in a sort of hibernation, to arise for future adjudication only upon a successful appeal and retrial by the Bays.

Accordingly, the Court finds that the Defendants are entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 50 on the Bays' trespass claim. The Clerk of the Court shall enter judgment in favor of the Defendants and against the Bays and close this case.

Dated this 28th day of September, 2021.

**BY THE COURT:**

*Marcia S. Krieger*
───────────────────────────

Marcia S. Krieger
Senior United States District Judge